459 P.2d 350

**CUTTER FLYING SERVICE, INC.,**
Plaintiff-Appellee,

v.

**STRAUGHAN CHEVROLET, INC.,**
Defendant-Appellant.

No. 8704.

Supreme Court of New Mexico.

Oct. 10, 1969.

McAtee, Marchiondo & Michael, Joseph D. Beaty, Albuquerque, for appellant.

Threet, Threet, Glass, King & Maxwell, Albuquerque, for appellee.

OPINION

PER CURIAM:

Upon rehearing, the opinion originally filed is withdrawn and the following substituted:

WATSON, Justice.

On May 18, 1965, Mr. A. Lee Straughan, then president of Straughan Chevrolet, Inc., defendant-appellant, left his company airplane with the Cutter Flying Service, Inc.

for repair of the nose strut. Cutter, plaintiff-appellee, worked on the nose strut and also performed an inspection and furnished certain labor and parts which it alleged were included within what is called "a one-hundred-hour inspection or an annual or periodic inspection."

An annual inspection is required by the Federal Aviation Authority for all private planes and a 100-hour inspection is required for planes which carry passengers for hire. The certificate that the plane is airworthy is entered in the log book of the aircraft only after the inspection and the necessary corrective action has been taken. Cutter's work was finished four to six days after Straughan's visit of May 18, and a statement was sent to appellant including all of the work and for some gasoline. No part of the statement having been paid, Cutter filed suit on the open account against appellant in the District Court of Bernalillo County on July 20, 1966.

At the trial, Cutter produced its service manager, Mr. Roach, and its sales manager, Mr. Draper, both of whom testified that Mr. Straughan, after ordering the repair of the nose strut, had told the service manager to go ahead and run an inspection on the airplane. Appellant's witness, Mr. Straughan, testified that he told Mr. Roach to see when the inspection was due, but not to do it without calling him first. Mr. Smokey Davis, a friend who accompanied Mr. Straughan, testified that Straughan told Roach to let him know before doing any work on the plane.

Judge Larrazolo found that Cutter could not recover for the repair of the nose strut because the work was not properly done but awarded judgment against appellant for $514.69 for the annual periodic inspection and minor work done in connection therewith and $15.25 for oil and gas for a total of $529.24. To this he added statutory interest "and a reasonable attorneys' fee in the sum of 15% of $529.94 plus costs."

Appellant ·objects to the award of the attorneys' fee and to the court's Finding No. 1, which reads:

"On May 18, 1965, A. Lee Straughan, president of Straughan Chevrolet, Inc., Vaughn, New Mexico, requested the plaintiff to repair the nose strut and to make an annual or periodic inspection of a Bonanza airplane which belonged to defendant, and to make necessary repairs in order that the plane could be certified as required by F.A.A. These repairs were to be charged to the defendant on an open account."

It is appellant's contention that substantial evidence was not in the record to support that portion of the court's Finding No. 1, that Mr. Straughan had requested repairs, other than the nose strut, and that the request for an annual inspection alone would not include making the necessary repairs for the certification. Appellant contends that his request was equally consistent with two or more hypotheses or inferences.

Appellant states that even though ·it is found that Mr. Straughan requested the annual inspection, he could just as reasonably have made the request for the purpose of establishing in his own mind what work might be necessary in the future, or that no work would be necessary, and he would have the plane certified for another year, or that if an unreasonable amount of work would be necessary, he might make other plans. The request for an inspection does not necessarily include an authorization for labor and materials to have the plane certified as airworthy, according to the appellant.

The itemized statement shows "100 hour —Periodic $120.00," followed by a description of the labor totaling $309.00 and a listing of 66 new parts installed for $180.40, plus 10 quarts of oil and the sales tax. Under appellant's theory it would only be liable for the $120.00 plus sales tax.

There is evidence, however, that when an inspection is ordered, this implies authorization to make the reasonably necessary repairs so that the certificate required by

F.A.A. can be given. To Mr. Roach, the ordering of the inspection meant to make the repairs necessary "so you could sign it off as airworthy" in the Aircraft Log Book. Mr. Cady, appellant's expert witness, who made out the next inspection certificate for appellant's plane, when asked: "What is the customary practice, the customary procedure, followed in doing an annual inspection?" stated:

"If a customer came in and said, 'I want an annual inspection and perform whatever is necessary,' that would be the procedure, but, normally, prices are discussed. You give them the cost of the basic periodic inspection. You make the inspection. If items come up that are of consequence that are going to add to this man's bill tremendously, then, of course, you would call the man, notify him, talk it over with him, unless you for some reason knew that this man—cost was no object, you see."

And, on redirect:

"Q Mr. Cady, you said that it would not be unusual for Cutter Flying Service to go ahead and certify an annual inspection if a one hundred hour inspection were requested in May, is that right—that was your testimony?

"A That is right, sir."

We agree that no authority to make unreasonably expensive repairs could be inferred or implied from a request for an inspection. No evidence was submitted to show that the repairs made were such, nor was a finding requested to the effect that the repairs made were unreasonable or unnecessary for the purpose of certifying the plane as airworthy.

The trial court, by its unchallenged Finding No. 4, found that the charges for the minor work done in connection with said inspection were reasonable and justified. In addition, Mr. Straughan testified that he was a regular customer of Cutter's and that both repairs and inspections had been made for him before and charged to him.

Only the trial judge can determine the truth from conflicting evidence.

He may indulge in reasonable inferences from the evidence in seeking the truth. We may not agree with his conclusion; but where there is substantial evidence to support it, his judgment must be affirmed. Maryland Casualty Co. v. Jolly, 67 N.M. 101, 352 P.2d 1013 (1960). We cannot say that such evidence together with reasonable inferences were not present here.

Appellant next contends that since the cause of action arose from a contract completed on May 18, 1965, § 18–1–37, N.M.S.A. 1953, allowing attorneys' fees as costs of actions on open accounts could not apply, because this law only became effective on June 20, 1965.

Section 18–1–37, N.M.S.A.1953 (Supp. 1967) (as amended by Ch. 164, N.M.S.L. 1967, to add the words "or small claims court"), reads:

"In any civil action in the district court or small claims court to recover on an open account, the prevailing party may be allowed a reasonable attorney fee set by the court, and taxed and collected as costs."

Appellant quotes from State ex rel. Stanley v. Lujan, 43 N.M. 348, 93 P.2d 1002 (1939), as follows:

"In the absence of a statute or rule of court it cannot be said that attorney fees are such items as are properly taxed as costs, or may be considered as items recoverable as damages. Dame v. Cochiti Reduction & Improvement Co., 13 N.M. 10, 79 P. 296; Tatavich v. Pettine et al., 31 N.M. 479, 247 P. 840; Atchison, Topeka & S. F. R. Co. v. Citizens' Traction & Power Co., 16 N.M. 163, 113 P. 813."

Would the allowance of the attorneys' fees in the present case be in violation of Art. II, § 19, of the New Mexico Constitution which prohibits any law impairing the obligations of contracts? Does the fact that part, or all, of the items in an open account were incurred before the effective date of the statute prevent the award of attorney fees as costs? We think not.

Although the general rule prior to the statute above quoted was as stated in Lujan, supra, exceptions were permitted before the statute was passed. These are shown in Gregg v. Gardner, 73 N.M. 347, 388 P.2d 68 (1963).

We would be reluctant to say that the 1965 statute limited powers of the court in awarding attorney fees, although, granted, those powers were seldom used. In addition, if the statute as here applied is in retrospect, nevertheless it is generally held that the fact that enactments awarding attorneys' fees, which are valid exercises of the power to prescribe costs, operate retrospectively will not render them unconstitutional. See Note VI, Validity of Statutory Provision for Attorneys' Fees, 90 A.L.R. 530 (1934).

Appellant argues, however, that because the effective date of § 18–1–37, supra, came after the formation of the contract, the statute was applied retroactively, contrary to the stated rule of this court. See Board of Education of City of Las Vegas v. Boarman, 52 N.M. 382, 199 P.2d 998 (1948). An analysis of the purpose of this section reveals that its application was not retroactive. See Note, Approaching Statutory Interpretation in New Mexico, 8 Natural Resources J. 689 (1968). We are of the opinion that its primary purpose is to discourage litigation on open accounts except in those situations where *both* parties are convinced of the correctness of their position. In other words, the statute is designed to prevent the threat of litigation as a tactic either to avoid paying just debts or to enforce false claims. Because this action was filed after the effective date of the statute, the statute applied to the parties only prospectively. See County of Kossuth v. Wallace, 60 Iowa 508, 15 N.W. 305 (1883), and Murphy v. George Brown Co., 91 N.J.L. 412, 103 A. 28 (1918).

Other than cases arising from the imposition of attorneys' fees as costs in actions against insurance companies, authorities on this question are rare. The insurance company cases disclose statutes that impose an attorney's fee only against the insurer, and are otherwise distinguishable because of the state's control under its police power of the issuance of insurance.

Although Art. IV, § 34 of our Constitution might prohibit the granting of attorney fees in cases pending at the time the statute was enacted, such is not the case here. Compare In re Hildebrand's Estate, 57 N.M. 778, 264 P.2d 674 (1953), and Bradbury & Stamm Const. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808 (1962).

Having resolved that there was substantial evidence for the allowance of the open account and that there was no error in the award of attorneys' fees, the judgment of the trial court is affirmed.

It is so ordered.

NOBLE, C. J., and MOISE, J., concur.