468 P.2d 875

**FOUNDATION DISCOUNTS, INC.,**
Plaintiff-Appellant,

v.

**Ray V. SERNA, Defendant-Appellee.**

No. 8874.

Supreme Court of New Mexico.
May 11, 1970.

Shipley, Durrett, Whorton & Conway, Thomas A. Sandenaw, Jr., Alamogordo, for appellant.

George L. Zimmerman, Alamogordo, for appellee.

## OPINION

JOE ANGEL, District Judge.

Plaintiff and defendant entered into a DEALER AGREEMENT which provided for the financing of vehicles to be secured by conditional sales contracts. Defendant sold an automobile and trailer, and the installment contract was assigned to plaintiff. Upon default by the purchaser, plaintiff repossessed the collateral, sold it at public auction, then brought suit to recover from defendant a deficiency judgment. The trial court held for defendant finding that plaintiff's exclusive remedy was under the DEALER AGREEMENT, which did not provide for a deficiency, and that plaintiff's only recourse was against the purchaser.

Appellant contends that the trial court erroneously based its decision exclusively on the DEALER AGREEMENT without reference to the terms of the Installment

Contract, or to the applicable provisions of the Commercial Code, which he claims provided him with alternative remedies. He also alleges error on the part of the trial court in refusing to adopt certain of his findings of fact.

The pertinent provision of the DEALER AGREEMENT reads as follows:

"REPURCHASES. Whenever an installment payment obligation purchased and held by you on a full recourse basis shall be in default for at least sixty days, you may at any time thereafter, request us to repurchase such obligation and we will, ten days after the receipt of such request, repurchase such obligation at the amount of its unpaid balance less the customary allowance for prepayment and the holdback on that particular obligation.

"In each case of the repurchase by us of an obligation hereunder, you shall deliver, assign and endorse to us without recourse the instruments of obligation and security upon receiving payment from us of the repurchase price. It shall not be necessary for you to make a formal tender to us of any such instrument of obligation or security and you may continue to make collections on each such obligation until we shall have paid you the repurchase price."

The following language is contained in the Installment Contract:

"In consideration of your purchase of the within contract, the undersigned guarantees payment of the Deferred Balance stated therein and covenants to pay Holder, upon demand, the Deferred Balance less any installments paid thereon if purchaser defaults in the performance of the contract. If the property has been repossessed from the purchaser and undersigned fails to pay the required sum upon demand, Holder may sell said property for undersigned's account at public or private sale, with or without notice, for such price as it can secure, and apply the proceeds (1) to the expense of retaking, repairing and reselling said property; (2) to the satisfaction of undersigned's liability, and undersigned agrees to pay Holder any deficiency upon demand. * * *"

There is substantial evidence in the record to support the finding that no demand was made on defendant, that he repurchase the automobile and trailer as provided in the DEALER AGREEMENT. The main thrust of plaintiff's attack seems to be based upon the Installment Contract and the deficiency therein provided for. It will be noted that the terms of the contract call for a demand to be made upon the defendant in the event of default by the purchaser and after repossession by the plaintiff (Holder). Plaintiff did not make such demand, alleging that he deemed it futile since the defendant had said he would not pay. The record discloses the following testimony:

"Q. [By Mr. Sandenaw] Did you advise him what you were going to do?

"A. I told him we were going to pick up this stuff and sell it and he was liable for the balance.

"Q. What was his reaction?

"A. He said he didn't care, he wasn't going to pay for it.

 * * * * * *

"Q. [By Mr. Sandenaw] When you say you made no offer to re-assign this contract back to Mr. Serna, why did you not, do you have any idea?

"A. Well, he said he wasn't going to pay for it.

"Q. He had already advised you what his position was?

"A. That's right.

"Q. And for that reason you decided it would be futile to proceed?

"A. That's right."

Thus, the record discloses that the question of demand as provided by the Installment Contract was squarely presented and argued to the court. The court stated that the contract, as interpreted by him, was meant to give defendant an opportunity to

repurchase the two vehicles for the amount that was outstanding and that he was entitled to have the vehicles upon payment of the balance owing. He further stated that since no formal demand was made, defendant was denied this right.

 The findings and judgment of the trial court will not be overturned where they are supported by substantial evidence. Cutter Flying Service, Inc. v. Straughan Chevrolet, Inc., 80 N.M. 646, 459 P.2d 350 (1969); Butler v. Butler, 80 N.M. 36, 450 P.2d 922 (1969); Le Clert v. Le Clert, 80 N.M. 235, 453 P.2d 755 (1969). Moreover, only that evidence and inferences to be drawn therefrom which support the court's findings are to be considered by us. Rutledge v. Johnson, 81 N.M. 217, 465 P.2d 274 (1970); Cutter Flying Service, Inc. v. Straughan Chevrolet, Inc., supra; Butler v. Butler, supra; Nance v. Dabau, 78 N.M. 250, 430 P.2d 747 (1967); Luna v. Flores, 64 N.M. 312, 328 P.2d 82 (1958). The test is not whether we agree or disagree with the findings of the trial court, but rather whether the evidence substantially supports same. Cutter Flying Service, Inc. v. Straughan Chevrolet, Inc., supra. We have examined the record carefully on this point and we are convinced that it does.

 Plaintiff contends that to have followed strictly the requirements of the Installment Contract by first repossessing the vehicles and then making demand upon defendant that he pay the balance would be futile because the defendant had stated that he would not pay.

The difficulty with this theory is that the court, as a trier of the facts, having the benefit of first-hand impressions to aid it and being in a unique position to evaluate the reliability, authenticity and weight of the

evidence and the witnesses, after having specifically considered the matter, ruled against it. The trial court specifically considered the matter and there is ample evidence in support of his ruling.

Appellant urges that the Uniform Commercial Code offers yet another remedy. Assuming, without deciding, that the Uniform Commercial Code has application to the transaction here involved, the decision of the trial court must still be affirmed.

Section 50A–9–504(3), N.M.S.A.1953, reads:

"* * * Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the *time and place* of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor * * *." (Emphasis ours.)

 Notice of the time and place of sale under the Uniform Commercial Code is thus required to be given to the debtor by a secured party. The record discloses that no formal written notice of the time and place of sale was given to defendant. Defendant may have had verbal notice that there would be a sale of the collateral. However, this does not satisfy the requirements of the Code. Barker v. Horn, 245 Ark. 310, 432 S.W.2d 21 (1968).

Since the plaintiff did not comply with the above section, he is not entitled to the remedy provided by the Code.

The judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and TACKETT, J., concur.