741 P.2d 1382

**FIRST NATIONAL BANK OF BELEN, a National Banking Corporation, Plaintiff-Appellee,**

v.

**Esquipula JIRON and Richard Jiron, Defendants-Appellants.**

**No. 17043.**

Supreme Court of New Mexico.

Sept. 4, 1987.

Anthony F. Little, Bernalillo, for defendants-appellants.

Charles B. Sanchez, Belen, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiff First National Bank of Belen (the Bank) filed a complaint against the defendants Richard and Esquipula Jiron (Jirons), husband and wife, seeking a judgment for $11,295.79 on a promissory note and foreclosure of collateral plus any deficiency judgment. The trial court granted a deficiency judgment in the amount of $8,612.77, plus interest, costs and attorney's fees. The Jirons appeal. We reverse and remand.

### FACTS

At trial the Bank's counsel presented evidence regarding the alleged amount of the deficiency owing after the proceeds of the public sale were applied to the indebtedness. At the close of the Bank's case, counsel for the Jirons moved for directed verdict, arguing that the Bank had failed to state a claim upon which relief could be granted because it had failed to plead or prove that the public auction of the collateral was done in a commercially reasonable manner. The Bank's counsel maintained he was under the belief that the only disputed matter between the parties concerned the exact amount of the deficiency left owing after the public sale. The court allowed the Bank to reopen its case because both counselors at the beginning of trial had indicated that only the amount of the deficiency was disputed. Subsequently, the Bank's case resumed and the following uncontroverted facts were disclosed.

On or about April 30, 1985, the Jirons obtained a loan from the Bank in the amount of $11,528.52 for the purpose of purchasing a tractor, a 1984 Russian-built Belarus 611. The Jirons by a properly executed instrument gave the Bank a security interest in the tractor. The Jirons

defaulted on the note after making three installment payments of $833.92. By telephone conversation, the parties agreed that on July 23, 1986 the Bank could repossess the tractor. To prepare the tractor for auction, the Bank hired Besco, Inc. to haul the tractor and make minor repairs totaling $343.76. On August 4, 1986, the bank sent the Jirons a letter which stated in pertinent part:

> This will constitute formal notice to you [that] unless the entire balance due on the contract is paid, or other arrangements satisfactory to the Bank are made within ten (10) days from the date of this letter, the collateral will be sold at a *private* sale and the proceeds applied to the cost of repossession and sale and to the indebtedness. Should the proceeds of the sale not be enough to pay the cost of sale and the indebtedness, the Bank may seek to recover the deficiency. (Emphasis added.)

This is the only notice which the Bank sent to the Jirons expressing its intended disposition of the tractor. The Bank made arrangements through Besco to have the tractor sold by Hetzel Auction Associates at a public auction. No notice was sent regarding the time and place of this auction. The tractor was sold on September 6, 1986 for $3900. These facts constituted the Bank's case-in-chief. Again, after the close of the Bank's case, the Jirons' counsel moved for directed verdict. The motion was denied.

The trial court, concluding that the Jirons were given reasonable notice of the sale of the collateral and of its disposition in a commercially reasonable manner, granted the Bank a deficiency judgment in the amount of $8,612.77, plus interest, costs and attorney's fees.

The Jirons' main contention on appeal is that the sale of the collateral was not done in a commercially reasonable manner as provided for by the Uniform Commercial Code. We agree. The record evidence shows that the public sale of the collateral did not comply with NMSA 1978, Section 55–9–504(3) (Cum.Supp.1986), which provides in pertinent part:

> Disposition of the collateral * * * including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale * * * shall be sent by the secured party to the debtor * * *.

■ The Bank sent notice of its intent to sell the collateral at a private sale, but a public sale was held instead. A notice of a private sale is insufficient to comply with Section 55–9–504(3) if the type of sale actually held is public, and no subsequent notice of the time and place of the contemplated public sale is sent. *See General Foods Corp. v. Hall*, 39 Ill.App.3d 147, 349 N.E.2d 573 (1976). Here, by giving notice of a private sale and then holding a public sale, the Bank deprived the Jirons of the opportunity to be present and bid at the sale and to encourage others to be present and bid, which is an important function of the required notice of a public sale. *Associates Fin. Serv. Co. v. DiMarco*, 383 A.2d 296 (Del.1978).

■ We do not agree, however, with the Jirons' contention that the Bank's failure to comply with Section 55–9–504(3) should constitute an absolute bar to a deficiency judgment. Some authorities have held that a secured party's failure to comply with the UCC, Section 55–9–504(3) acts as an absolute bar to a deficiency judgment. *See e.g. Morris Plan Co. v. Johnson*, 133 Ill.App.2d 717, 271 N.E.2d 404 (1971); *Herman Ford-Mercury, Inc. v. Betts*, 251 N.W.2d 492 (Iowa 1977); *Chittenden Trust Co. v. Maryanski*, 138 Vt. 240, 415 A.2d 206 (1980); *Aimonetto v. Keepes*, 501 P.2d 1017 (Wyo. 1972). This Court has refused to follow that rule. In *Clark Leasing Corp. v. White Sands Forest Products, Inc.*, 87 N.M. 451, 455, 535 P.2d 1077, 1081 (1975), this Court stated: "We consider this rule (referring to the absolute bar rule) repug-

nant to the spirit of the UCC. The complete denial of a deficiency smacks of the punitive and is directly contrary to Article Nine's underlying theme of commercial reasonableness." Accordingly, this Court has declined to follow the dictum in *Foundation Discounts, Inc. v. Serna,* 81 N.M. 474, 468 P.2d 875 (1970), to the effect that a secured party's failure to comply with the UCC, Section 55–9–504(3) precludes suit for deficiency after resale.

 Where the collateral has been sold in a manner that does not comply with the provisions of the UCC, there is a rebuttable presumption that the collateral was worth an amount at least equal to the outstanding balance. To overcome the presumption, the secured party has the burden of proving the value of the collateral by evidence other than the sum received at the sale. *Clark Leasing Corp. v. White Sands Forest Products, Inc.,* 87 N.M. at 456, 535 P.2d at 1082. For example, evidence could be introduced indicating the reasonable amount for which the collateral would have sold at a proper sale, such as an appraisal at or near the time of repossession, or proof of the condition of the collateral and the usual price of items of like condition. *Kobuk Eng'g & Contracting Serv. v. Superior Tank & Constr. Co-Alaska, Inc.,* 568 P.2d 1007 (Alaska 1977).

Based on the foregoing, we reverse the trial court's judgment and remand the case for a new trial to be conducted in a manner consistent with the views expressed in this opinion. On remand, the Bank has the burden of showing what amount the sale would have brought if done in compliance with the UCC. Thus, the difference between what the sale brought when performed improperly and what it should have brought if done correctly, will be the damages allowed to the Jirons. If such amount does not equal the total deficiency, the Bank may recover the amount remaining unpaid. *Clark Leasing Corp.,* 87 N.M. at 455–56, 535 P.2d at 1082–83. The Jirons are allowed their costs of this appeal.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and STOWERS, J., concur.