766 P.2d 293

**VILLELLA ENTERPRISES, INC. and Paul Villella, Plaintiffs–Appellees,**

**v.**

**Robert YOUNG, Defendant–Appellant.**

**No. 17384.**

Supreme Court of New Mexico.

Dec. 21, 1988.

Bruce P. Moore, Albuquerque, for defendant-appellant.

Villella, Skarsgard & Noya, P.A., Patrick Villella, Albuquerque, for plaintiffs-appellees.

## OPINION

RANSOM, Justice.

Plaintiffs Paul Villella and Villella Enterprises, Inc. brought suit against Robert Young to collect a deficiency judgment on a defaulted promissory note. Young answered and filed a counterclaim. The matter was resolved below by summary judgment based upon the pleadings, a pretrial deposition, and several affidavits on file. Young's counterclaim was dismissed with prejudice, and damages were awarded to plaintiffs in the amount of $157,678.27 plus interest and costs. This appeal relates only to the judgment on the complaint. We reverse.

Young contends the existence of several factual issues precluded the entry of summary judgment by the district court. Spe-cifically, he presents the following issues for review: (1) whether the sale of the secured collateral was commercially reasonable in compliance with the Uniform Commercial Code provision for the disposition of collateral, NMSA 1978, Section 55–9–504 (Repl.Pamp.1987); (2) whether notice of default was required either by the terms of the promissory note or the asset purchase agreement; and (3) whether the remedy of acceleration of the maturity of the note was dependent upon Paul Villella's signature on the promissory note.

Although our resolution of the first issue is dispositive of the case, we nevertheless will address the second point raised by Young. The final point, however, will not be considered because there is no indication in the record that the issue was raised below. *See Koran v. White,* 69 N.M. 46, 363 P.2d 1038 (1961) (an argument not raised in the trial court, by motion or otherwise, and not jurisdictional, will not be considered on appeal).

Villella Enterprises was operating Ten Central Exchange, a restaurant and lounge located at 1001 Central in Albuquerque, when, in November 1985, it assigned its interest in the building lease to defendant Young and Mary F. Harvey Tahoun, Young's business partner at the time. A written consent to this assignment was signed by the lessor and by all of the parties. Concurrently, Young and Tahoun executed an asset purchase agreement in which they agreed to purchase for $290,000 plus inventory the existing business including liquor license No. 1414, the goodwill of a going concern, stock-in-trade, fixtures, equipment, transferable contracts and other property used in its operation. Young and Tahoun took possession of the premises in January 1986. All documents remained in escrow until the closing date, which was tied to the issuance of the liquor license in the names of Young and Tahoun.

In April 1986, Young and Tahoun executed a promissory note in the amount of $218,760.95 to be paid in equal monthly installments of $5,500, which included interest, and two balloon payments of $10,-000 each. To secure the note, a security

agreement and financing statement were executed and filed in May. The collateral was described as all personal property owned by the debtors and used upon the real estate of Toni's (formerly Ten Central Exchange), affixed to Toni's, or used in connection with the business operations of Toni's, and included the liquor license.

In June or July of 1986, after indications of insecurity became apparent, Villella Enterprises assigned its interest in the promissory note to plaintiff Paul Villella. Subsequently, letters were sent by Villella warning Young and Tahoun about the pattern of delinquent payments and demanding timely payments in the future. The business ceased operation during the last week in August. On August 31, Villella notified Young and Tahoun of his election to accelerate the maturity of the note.

By letter dated October 27, Villella informed Young that all collateral covered by the security agreement would be sold in a public sale on November 11. Two notices of sale were published in a weekly legal periodical, the *Health City Sun*, prior to the sale date. Only Villella attended the sale and he purchased the assets for a bid of $80,000.

Pursuant to Section 55–9–504(2), which concerns a debtor's liability for any deficiency, plaintiffs filed an action for the difference between the amount due under the promissory note and the $80,000 bid, as well as for unpaid rents, attorney fees, and costs. On motion for summary judgment, the district court had before it the pleadings, Young's deposition, and affidavits by Young, Villella, an escrow agent, a liquor license broker, and a broker who specialized in the sale of bar businesses. The trial court was obligated to view the pleadings, depositions, and affidavits in the light most favorable to Young, the party opposing the motion. *See State v. Integon Indem. Corp.*, 105 N.M. 611, 735 P.2d 528 (1987). Our determination of whether summary judgment was proper must be based upon the whole record taking note of any evidence therein that puts a material fact in issue. *Koenig v. Perez*, 104 N.M. 664, 666, 726 P.2d 341, 343 (1986).

Section 55–9–504(3) mandates that every aspect of the disposition of the collateral, including the method, manner, time, place and terms must be commercially reasonable, and that reasonable notification of the time and place of any public sale shall be sent by the secured party to the debtor. Section 55–9–504(3) also permits the secured party to buy the collateral at any public sale. When suing for a deficiency, a creditor should allege and, unless admitted, prove that the disposition of the collateral was commercially reasonable, *see Clark Leasing Corp. v. White Sands Forest Prods., Inc.*, 87 N.M. 451, 535 P.2d 1077 (1975), and that reasonable notice was sent to the debtor (unless notice was not required under the provisions of Section 55–9–504(3)). In determining commercial reasonableness, each case will turn on its particular facts; but, generally, in response to a motion for summary judgment, evidence adduced by the debtor as to any aspect of the sale, including the amount of advertising done, normal commercial practices in disposing of particular collateral, the length of time elapsing between repossession and resale, whether deterioration of the collateral has occurred, the number of persons contacted concerning the sale, and even the price obtained, will be pertinent. *See Clark Leasing Corp.*, 87 N.M. at 455, 535 P.2d at 1081.

Villella's affidavit indicated that Young had been given notice of the public sale of all the assets; that two weeks prior to the sale Villella had placed an advertisement in a weekly legal periodical; and that $80,000 had been bid for the assets. Further, Villella stated that "[t]he $80,000 bid at the foreclosure sale was a reasonable price considering the fact that the business was not a going business and was [for] the purchase of [the liquor license and all other] assets. The price was reasonable considering the expenses that would have to be paid by the successful bidder from the date of foreclosure sale to the date that the Alcoholic Beverage Control granted a license."

In further support of the reasonableness of the price bid, Villella submitted the affi-

davit of a broker of liquor licenses who, based upon his experience in the past ten years involving the sale and purchase of New Mexico liquor licenses, opined that, in November of 1986, a liquor license would have sold for $60,000 cash in a distress sale and for $70,000 cash or $80,000 on terms in a market sale.

We believe Villella made a prima facie showing that he was entitled to summary judgment. Prima facie showing means such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted. *Kelly v. Board of Trustees,* 87 N.M. 112, 529 P.2d 1233 (Ct.App.), *cert. denied,* 87 N.M. 111, 529 P.2d 1232 (1974). Upon making this showing, the burden then shifted to Young who had to show at least reasonable doubt, rather than slight doubt, as to the existence of a genuine issue of fact and that Villella was not entitled to summary judgment as a matter of law. *See Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972); *Harrison v. Massey–Ferguson Credit Corp.,* 175 Ga.App. 752, 334 S.E.2d 352 (1985) (where creditor shows prima facie that sale was reasonable, debtor must support challenge to sale by asserting specific facts showing genuine issue for trial). Unlike the trial court, we conclude that Young did present sufficient specific evidence to establish reasonable doubt that Villella was entitled to summary judgment as a matter of law. We do not agree with Villella that Young failed to raise a material issue of fact that placed in dispute the commercial reasonableness of the sale.

Young raises three issues in this appeal regarding commercial reasonableness: (1) the value received for the secured collateral, (2) the adequacy of the notice of public sale, and (3) the time period between the first notice of sale and the date of sale. Because we hold that sufficient facts were introduced as to the first two issues to defeat summary judgment, we do not address the third.

In his affidavit, Young attested to the fact that on September 26, 1986, he received an offer of $230,000 for Toni's. Young submitted with his affidavit a signed purchase agreement, which indicated that there were buyers willing to pay $230,000 for liquor license No. 1414 and for all furniture, fixtures, signs, and equipment which were on the premises of Toni's as of September 26, 1986. Young further submitted the affidavit of Ron Berlint, an agent for the sale of bar businesses, who stated the fair market value of Toni's was $230,000.

Villella counters that the $230,000 figure is irrelevant because that figure refers to the entire bar business, rather than the assets sold at the foreclosure. Villella contends that Young offered no material or contradictory evidence that the value of the liquor license and collateral sold was more than the $80,000 bid. Villella maintains further that Berlint was swearing to the valuation of a going business. Berlint's affidavit stated, however, that the fair market value of Toni's as a closed business was $230,000 and evidence was presented that potential buyers were willing to pay that price.

Villella correctly asserts that Berlint assumed a $230,000 price would include the lease and fixtures, but that the lease and fixtures were not sold at the U.C.C. sale. Villella argues that Young did not break down the value of the collateral sold and, therefore, offered no evidence that Villella's $80,000 bid was not reasonable. However, it was Villella's burden to demonstrate that the price bid was reasonably within fair market value of all of the assets that comprised the bar business known as Toni's. Although it was undisputed that the fair market value of the liquor license was between $60,000 and $80,000, Villella presented no evidence, other than his own estimation, that the fair market value of all of the remaining assets of Toni's was no more than $20,000.

■ Admittedly, a debtor will not rebut a prima facie presumption of commercial reasonableness merely by contending that the price obtained for the collateral was too low. *See Nadler v. Baybank Merrimack Valley,* 733 F.2d 182 (1st Cir.1984); *see also* § 55–9–507(2). Otherwise every disgruntled debtor could manufacture a

jury case by contesting the price bid for the collateral. 733 F.2d at 184. Nonetheless, the price obtained is a relevant factor. Moreover, the price at which the secured party repurchases the collateral is not a reliable indicator of its fair market value because the transaction is self-serving. *Kobuk Eng'g & Contracting Servs., Inc. v. Superior Tank & Constr. Co–Alaska, Inc.,* 568 P.2d 1007, 1012 (Alaska 1977); *Connecticut Bank and Trust Co. v. Incendy,* 207 Conn. 15, 30, 540 A.2d 32, 40 (1988) (to establish the fair market value of collateral, the secured party should present credible and objective evidence other than the price received or the opinions of its own agents and employees). "This is particularly true where, as here, the creditor purchased the property for itself at a sale where, because of the limited notice given, there was an opportunity for self-dealing." *Kobuk,* 568 P.2d at 1012.

■ The substantial price difference between Villella's reacquisition of all of Toni's assets for $80,000 when only weeks before $230,000 was offered for Toni's as a closed business is cause to scrutinize closely whether the sale was commercially reasonable. We are particularly concerned with the minimal effort exerted by Villella to notify the public of the sale. Notice of sale should be given to a "public" reasonably expected to have an interest in the collateral and should be "published in a manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from competitive bidding of a strived-for lively concourse of bidders." *Foster v. Knutson,* 84 Wash.2d 538, 544, 527 P.2d 1108, 1114 (1974) (en banc); *cf. First Nat'l Bank v. Jiron,* 106 N.M. 261, 263, 741 P.2d 1382, 1384 (1987) (function of notice of public sale to debtor is to allow debtor opportunity to be present and bid at sale and encourage others to be present and bid). Villella placed an ad only in the *Health City Sun,* a weekly legal periodical, two weeks prior to the sale. No evidence was produced that the *Health City Sun* is the type of publication that would reach prospective bidders for the assets of a bar business. *See, e.g., Contrail Leasing Partners, Ltd. v. Consol-*

*idated Airways, Inc.,* 742 F.2d 1095 (7th Cir.1984) (in public sale of repossessed aircraft, it was not commercially reasonable for secured party to only place an inconspicuous ad in one publication of used-aircraft trade journal); *Leasing Serv. Corp. v. Broetje,* 545 F.Supp. 362 (S.D.N.Y.1982) (where a secured party failed to provide any information by which the reasonableness of advertising for the sale could be judged and material questions remained concerning the price at which the collateral was sold and the type of auction used, summary judgment as to commercial reasonableness was precluded); *Savage Constr. Inc. v. Challenge–Cook Bros.,* 714 P.2d 573 (Nev.1986) (per curiam) (lack of attendance and the purchase of collateral by secured party could indicate that the secured party did not advertise the public sale in a manner calculated to provide notice to a potential buying public). Neither is there any indication that Villella contacted the individuals who had offered $230,000 to purchase Toni's in September even though he was aware of their identities. *See Savage Constr., Inc.,* 714 P.2d at 576; *Brigham Truck and Implement Co. v. Fridal,* 746 P.2d 1171 (Utah 1987) (in determining commercial reasonableness, of primary importance are the secured party's attempts to obtain a fair price for the collateral by advertising the collateral or otherwise notifying potential buyers that the collateral is for sale).

"The secured party's paramount obligation under article 9 is to act in a 'commercially reasonable' manner. [A secured party] is required to use his best efforts to sell the collateral for the highest price and to have a reasonable regard for the debtor's interest". *Foster,* 84 Wash.2d at 544–45, 527 P.2d at 1114–15; *see also Clark Leasing Corp.,* 87 N.M. at 454, 535 P.2d at 1080 (creditor has good faith obligation to debtor to use reasonable means to see that a reasonable price is received for collateral). The undisputed facts presented below do not convince us that Villella acted in a commercially reasonable manner as a matter of law. We conclude that material facts remain in dispute regarding the com-

mercial reasonableness of the disposition of this collateral.

 Young also contends that the default provisions in the asset purchase agreement and the promissory note were ambiguous with regard to any requirement of notice of default. While Young concedes that the promissory note clearly did not require that Villella give notice of default, he submits that the language in the asset purchase agreement created an issue of a disputed material fact because the agreement was ambiguous on this point. Whether an ambiguity exists is a question of law to be decided by the court. *Young v. Thomas*, 93 N.M. 677, 604 P.2d 370 (1979). This Court has held that a contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. *Vickers v. North Am. Land Devs., Inc.*, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). In making its determination, the court must consider the agreement as a whole. *Shaeffer v. Kelton*, 95 N.M. 182, 185, 619 P.2d 1226, 1229 (1980).

The asset purchase agreement incorporated the promissory note, thus both documents are to be construed together. *See Master Builders, Inc. v. Cabbell*, 95 N.M. 371, 373, 622 P.2d 276, 278 (Ct.App.1980), *cert. denied*, 95 N.M. 426, 622 P.2d 1046 (1981) (two documents are properly construed together when one or both refers to the other). The relevant language in the promissory note stated "in case of default of the payment of any of the said installments ... the whole of the principal sum then remaining unpaid ... shall forthwith become due and payable *without notice or demand*, at the option of the holder of this note." (Emphasis added.) The asset purchase agreement stated that "upon the occurrence of any of the following events of default and Purchaser's failure to cure *after any required notice*, Seller shall have the right to exercise any or all of the remedies set forth in the Note or Security Documents, including the right to accelerate maturity of the Note and demand immediate payment of all amounts disbursed hereunder." (Emphasis added.) Where the terms of an agreement are plainly stated, the intention of the parties must be ascertained from the language used. *Hoge v. Farmers Market & Supply Co.*, 61 N.M. 138, 140, 296 P.2d 476, 477–78 (1956). Clearly, notice of default was not a requirement of the agreement, and the district court was correct that the agreement was unambiguous as a matter of law with regard to the notice provisions.

On the issue of commercial reasonableness, the trial court erred in granting summary judgment in favor of Villella. We reverse and remand for trial.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and SOSA, Senior Justice, concur.