778 P.2d 434

**FIRST NATIONAL BANK OF DONA ANA COUNTY, A National Banking Association, Plaintiff–Appellee,**

v.

**John L. RUTTLE, Defendant–Appellant.**

No. 18152.

Supreme Court of New Mexico.

Aug. 17, 1989.

688

Neil E. Weinbrenner, Weinbrenner, Richards, Paulowsky and Sandenaw, P.A., Las Cruces, for plaintiff-appellee.

Norman E. Todd, Las Cruces, for defendant-appellant.

## OPINION

RANSOM, Justice.

John Ruttle appeals a deficiency judgment entered in favor of First National Bank of Dona Ana County following the sale of collateral pledged as security for a promissory note. Five of the six pieces of farm equipment at issue were sold at public auction, and the sixth piece of equipment, a tractor, was sold by private sale to a company in the business of buying and selling new and used equipment. Ruttle challenges the findings of fact that the equipment was sold for commercially reasonable amounts.

Ruttle complains that the district court limited its consideration of the disposition of the collateral to questions of notice and price only, and he asks this Court to clarify the law by holding: (1) the creditor has the burden of proving, by a preponderance of the evidence, that every aspect of the disposition of collateral was commercially reasonable; and (2) when the disposition of collateral was not commercially reasonable in all respects, a presumption arises that the fair market value of the collateral at the time of repossession was equal to the debt, and that the debtor therefore owes no deficiency when the creditor fails to dispose of collateral in a commercially reasonable manner. At issue are the secured transaction provisions of the Uniform Commercial Code, NMSA 1978, Sections 55-9-101 to 55-9-507 (Repl.Pamp.1987). In contrast to Ruttle's position, we view the challenges raised to the court's decision as substantial evidence questions and affirm.

*Commercial reasonableness.* In *Villella Enterprises, Inc. v. Young,* 108 N.M. 33, 766 P.2d 293 (1988), we recently stated that:

> Section 55-9-504(3) mandates that every aspect of the disposition of the collateral, including the method, manner, time, place and terms must be commercially reasonable, and that reasonable notification of the time and place of any public sale shall be sent by the secured party to the debtor. Section 55-9-504(3) also permits the secured party to buy the collateral at any public sale. When suing for a deficiency, a creditor should allege and, unless admitted, prove that the disposition of the collateral was commercially reasonable, *see Clark Leasing Corp. v. White Sands Forest Prods., Inc.,* 87 N.M. 451, 535 P.2d 1077 (1975), and that reasonable notice was sent to the debtor (unless notice was not required under the provisions of Section 55-9-504(3)). In determining commercial reasonableness, each case will turn on its particular facts; but, generally, in response to a motion for summary judgment, evidence adduced by the debtor as to any aspect of the sale, including the amount of advertising done, normal commercial practices in disposing of particular collateral, the length of time elapsing between repossession and resale, whether deterioration of the collateral has occurred, the number of persons contacted concerning the sale, and even the price obtained, will be pertinent. *See Clark Leasing Corp.,* 87 N.M. at 455, 535 P.2d at 1081.

*Id.* at 35, 766 P.2d at 295.

As *Villella* makes clear, Ruttle is correct in contending that the secured party must prove its disposition of the collateral was commercially reasonable. The secured party, however, need not anticipate in its case in chief every aspect that may come into play in determining commercial reasonableness. Once the secured party adduces substantial evidence of commercial

reasonableness,[1] the debtor has the burden to go forward with evidence if he wishes to raise a genuine issue of fact as to specific other aspects of the disposition of the collateral claimed not to have been commercially reasonable. The ultimate burden of proof on any such issue rests with the secured party seeking a deficiency judgment.

Ruttle complains about (1) failure to provide written notice of the sale of equipment; (2) disparity between the sale price and value; and (3) the means of disposition, including resort to public auction of some of the equipment and failure to seek more than one bid on the tractor before making a private sale, the amount of advertising done prior to the auction, failure to negotiate over the auctioneer's fee, failure to wash or paint the equipment sold at auction in order to secure the best price, and imposition of cash or certified check as the only terms of sale.

*Failure to provide written notice is not an absolute bar to deficiency judgment.* Ruttle argues the sale of the six pieces of equipment at issue did not comply with Section 55–9–504(3) because he was not notified at all as to the private sale of the tractor, nor given written notice of the sale of the other equipment at auction. Ruttle testified that, although he knew his property was being stored by the auction company and heard about the auction on the radio several days in advance, he never received notice from the Bank that his property was among that to be sold.

■ Independent of but related to the requirement of commercial reasonableness in the disposition of collateral, Section 55–9–504(3) also requires "reasonable notification" of the time and place of a public sale or of the time after which a private sale is to be made. We previously have held this provision to require written notice to a

debtor. *See Foundation Discounts, Inc. v. Serna,* 81 N.M. 474, 468 P.2d 875 (1970).[2] Notice of a pending public sale serves the important purpose of giving the debtor the opportunity to be present and bid on the sale and to encourage others to do likewise. *See First Nat'l Bank v. Jiron,* 106 N.M. 261, 263, 741 P.2d 1382, 1384 (1987). Notice of a pending private sale also allows the debtor to protect his or her interests in the collateral by allowing time for redemption, or to challenge a proposed disposition, or to find other buyers. *See* P. Coogan, W. Hogan, and D. Vagts, 1A *Benders Uniform Commercial Code Service* § 806[2] (1989).

■ The Bank did not give proper notice in this case. Nevertheless, when a secured party has not complied with the notice provisions of Section 55–9–504(3), it still may obtain a deficiency judgment if it proves the market value of the collateral. *Clark Leasing Corp. v. White Sands Forest Prods., Inc.,* 87 N.M. 451, 456, 535 P.2d 1077, 1082 (1975). Such proof must be by evidence other than the sum received at sale. *See Jiron,* 106 N.M. at 264, 741 P.2d at 1385.

*Jiron* suggests that, when there has been no proper notice to the debtor, appropriate proof of the value of collateral includes an independent appraisal of the collateral at or near the time of repossession, or proof of the condition of the collateral and the usual price of items of like condition. 106 N.M. at 264, 741 P.2d at 1385. We believe some of the evidence discussed in the following sections is of this type. Other evidence presented that was probative of the commercial reasonableness of the sale also may have tended to establish the fair market value of the collateral.

■ *Fair market value issue waived.* However, this case does not require us to decide whether the secured party may rely

---

1. *See* Section 55–9–507(2) and Section 55–9–507, official comment 2.

2. The test, however, of reasonable notice is whether the secured party has made a good faith effort and has taken reasonable steps to notify the debtor, not whether the debtor actually received notice. *See Begay v. Foutz & Tanner,*

*Inc.,* 95 N.M. 106, 113–14, 619 P.2d 551, 558–59 (Ct.App.1979), *rev'd on other grounds sub. nom., Reeves v. Foutz & Tanner, Inc.,* 94 N.M. 760, 617 P.2d 149 (1980). In this case, the Bank's loan officer testified that no notice was sent. Thus, the distinction between actual and constructive notice is not at issue.

on evidence other than the type discussed in *Jiron* to prove fair market value. Ruttle did not argue at trial that the Bank failed to prove the market value of the collateral by introduction of appropriate independent evidence. Rather, Ruttle argued that failure to give proper notice rendered the sale commercially unreasonable and requested a conclusion of law that the Bank was barred from asserting any deficiency due to the commercially unreasonable sale. If we accept for the purpose of argument that a showing of no proper notice requires proof of market value price to establish a prima facie case for a deficiency judgment, Ruttle nonetheless made no request for a specific finding of fact on that issue. We conclude that Ruttle waived the right to raise on appeal the absence of proof of the fair market value of the collateral consistent with *Jiron*. *See Kennecott Copper Corp. v. Employment Sec. Comm'n*, 81 N.M. 532, 469 P.2d 511 (1970) (review of evidence on appeal precluded by failure to request findings of fact); SCRA 1986, 1-052(B)(1)(f). Nevertheless, we review Ruttle's argument that the price received for the collateral was too low in terms of his overall challenge to the commercial reasonableness of the Bank's disposition of his property.

■ *Price received commercially reasonable.* In this case, the Bank presented testimony from the manager of the farm equipment company to which it sold the tractor that, given the number of hours of operating time on the tractor and its general condition, he believed the sum his company paid the Bank was commercially reasonable. Moreover, he testified that his company turned around one month later and sold the tractor for $8,500, the same amount it paid the Bank.

Similarly, an employee of the company that conducted the auction at which Ruttle's remaining property was sold testified that 1,700 bidders attended the auction, and that, in his opinion, the price received for Ruttle's property reflected the average price such equipment could be expected to receive at an auction. The Bank's loan officer testified that none of several dealers in farm equipment contacted in regard to this property expressed an interest in purchasing it through private sale.

Finally, the auctioned equipment and the tractor sold at private sale brought a price of approximately fifty percent of the value given by Ruttle when he secured the promissory note with that equipment one and a half to two years before the sale. Other equipment sold by Ruttle less than a year after he had placed a value on it brought a price of less than forty percent of that value. This was substantial evidence from which the court could conclude that the price received for the collateral was commercially reasonable.

■ *Means of disposition not unreasonable.* Ruttle complains that the Bank decided to sell five of the six pieces of equipment at auction because this was not the Bank's normal practice and complains that, in disposing of the tractor through a private sale, the Bank failed to solicit offers from more than one party. As noted above, the Bank loan officer testified he contacted several dealers in farm equipment in the area, and none were interested in purchasing the five pieces of equipment auctioned. Under these circumstances, the decision to auction this equipment was reasonable. We also believe that whether failure to seek other bids on the tractor resulted in a commercially unreasonable sale was a question of fact, and that there was substantial evidence to support the conclusion that the sale was commercially reasonable. *See Villella*, 108 N.M. at 35, 766 P.2d at 295.

■ Similarly, we do not believe the evidence presented regarding the auctioneer's fee, the degree of advertising, the extent of preparation of the collateral prior to auction, or the "cash only" terms negates the substantial evidence supporting the conclusion that the disposition of the remaining five pieces of equipment at auction was commercially reasonable. The employee of the auction company testified that its fees ranged from five to twenty percent of the sale price; in light of this testimony we do not believe the ten percent commission charged in this case resulted in a commercially unreasonable sale simply because the Bank neglected to attempt to negotiate a lower fee. Nor do we believe

the advertising done in advance of sale was inadequate in light of the 1,700 bidders attending the auction.

With regard to the preparation of collateral, the only testimony that tended to establish any of the equipment in question was in need of repair or preparation prior to auction concerned a baler, which the auction company supplied with new batteries. The auction company employee also testified that any efforts expended in preparing the collateral would have been deducted from the price received, and that one piece of equipment—a two-way radio—was still in the possession of the auction company because it wished to sell it in conjunction with other equipment in order to obtain the best price.

Finally, with regard to the "cash only" terms of the sale, there was no evidence to suggest that this was not the normal practice of the auction company. In light of our conclusion that the decision to auction the equipment was reasonable under the circumstances, we do not believe the terms imposed by the auction company rendered the sale commercially unreasonable as a matter of law. In support of his proposition that the "cash only" terms rendered the sale unreasonable, Ruttle cites *Weiss v. Northwest Acceptance Corp.*, 274 Or. 343, 546 P.2d 1065 (1976). *Weiss* held the imposition of these terms, like the decision whether to wash or clean collateral prior to sale, was pertinent to the inquiry into whether the disposition of the collateral in question was reasonable, but *Weiss* did not hold that these terms rendered the disposition unreasonable as a matter of law.

*Conclusion.* We conclude there was substantial evidence of commercial reasonableness as to each aspect of the sale on which Ruttle purports to have adduced evidence to the contrary. Accordingly, the decision of the district court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.