WINTERS NATIONAL BANK AND TRUST COMPANY, APPELLEE,
*v.* SAKER ET AL., APPELLANTS; ISALY, APPELLEE.

(No. 78AP-726—Decided October 9, 1979.)

*Coolidge, Wall, Matusoff, Womsley & Lombard Co., L.P.A.,* and *Mr. Ronald S. Pretekin,* for appellee Winters National Bank and Trust Company.

*Theodore R. Saker Co., L.P.A.,* and *Mr. Theodore R. Saker,* for appellants.

*Messrs. Moritz, McClure, Hughes, Kerscher & Price, Mr. James J. Hughes, Jr.,* and *Mr. John F. Berry,* for appellee Richard A. Isaly, Jr.

MOYER, J.   This cause is before us upon the appeal of the defendants-appellants, Theodore R. Saker and Patricia A.

Saker, from a judgment of the Court of Common Pleas of Franklin County, against the Sakers and defendant-appellee, Richard A. Isaly, Jr., on a promissory note held by plaintiff-appellee, Winters National Bank and Trust Company. The trial court also rendered final judgment for Isaly against the Sakers on Isaly's cross-claim against them. No assignment of error has been asserted regarding that branch of the court's judgment.

The amount of the judgment against the Sakers was $334,522.60; plus, accrued interest through December 16, 1977, in the amount of $116,482.15; plus, interest on the principal sum accruing at the rate of 2 percent above the prime lending rate at Winters National Bank and Trust Company (the plaintiff) from December 16, 1977; and for costs.

The record contains stipulations of fact which indicate the following. On August 22, 1975, the Sakers and Isaly executed and delivered a promissory note in the principal amount of $834,522.60 to plaintiff. As security for the note, Isaly pledged 20,713 shares of the common stock of the American Bank of Central Ohio to plaintiff, and Patricia Saker pledged 20,719 shares of the common stock of the American Bank of Central Ohio to plaintiff. In March of 1976, before plaintiff made any declaration of default or demand for payment upon the promissory note, plaintiff caused all the shares of the American Bank of Central Ohio stock pledged by Isaly and Patricia Saker to be transferred into the name of its nominee, Ajax & Company, an Ohio partnership. The parties further stipulated that no payments on the note were made since March of 1976, and that, if defendants were found liable, the amount due plaintiff would be $451,004.75.

Additional stipulations indicate that Ajax & Company (hereinafter referred to as Ajax) is an Ohio general partnership comprised solely of officers of the trust department of plaintiff, and that Ajax was formed for the purpose of acquiring, holding, selling and otherwise disposing of stocks, bonds and other securities as an agent or nominee only. The stipulations further indicate that Ajax may not buy, sell, own, hold, borrow, pledge or otherwise deal with stocks, bonds, or notes or other securities for the individual account of the firm; that Ajax was the registered owner of the 20,719 shares of American Bank of Central Ohio common stock transferred

from Patricia Saker and of the 20,713 shares of stock transferred from Isaly; and, that Ajax held such stock as nominee of plaintiff. Finally, the parties agreed that Ajax was empowered to act regarding such stock solely pursuant to the instructions of plaintiff.

In April of 1977, plaintiff sold stock of the Eastern Ohio Bank, which the Sakers had pledged to plaintiff for another promissory note. $30,109.92 of the proceeds from the sale of the Eastern Ohio Bank stock was applied in partial satisfaction of the note which is the subject of this suit.

Plaintiff sued on the note in August of 1976, and the Sakers answered the complaint with the defense that the note had been paid as a result of plaintiff's action in allegedly converting the ownership of the collateral to an entity which was controlled and belonged to plaintiff, and that this action by plaintiff constituted an election to retain ownership of the collateral in lieu of collecting the debt from defendants. The Sakers also denied that Isaly had executed the note as an accommodation party.

On the last business day before the trial of this action, plaintiff sold all the shares of common stock of the American Bank of Central Ohio which defendants had transferred as collateral. The Sakers and Isaly received a letter from plaintiff, on December 2, 1977, which was 17 days prior to trial, stating that plaintiff would proceed on or after December 15, 1977, to attempt to sell, at $12.068 per share, the shares of American Bank of Central Ohio common stock pledged by them as security for the loan. The letter also stated that plaintiff intended to proceed with the trial in its cause of action, regardless of whether the shares of stock were sold.

On December 19, 1977, the day of the trial, the Sakers moved to counterclaim against plaintiff, alleging that the sale of the collateral was not accomplished in a commercially reasonable manner. The court, after hearing all the evidence, found that the issue had not been raised in the Sakers' original answer and that no evidence had been offered at trial to support the allegation and overruled the motion.

A vice-president for plaintiff testified that at all times after the transfer of the American Bank of Central Ohio stock to Ajax, plaintiff considered defendants the beneficial owners of said stock. Plaintiff offered in evidence copies of separate

transmittal letters, which were sent to the Sakers and Isaly, requesting them to direct Ajax as to how to act with respect to the American Bank of Central Ohio stock; a proxy statement was enclosed with each letter. Isaly responded by directing the manner in which his stock should be voted, and the testimony indicated that his stock was voted accordingly. Theodore Saker responded that he believed that the transfer of the stock to Ajax represented a cancellation of his debt to plaintiff and indicated, on behalf of Patricia Saker, that no directions would be given with respect to the voting of the stock. Dividends on the stock were forwarded by Ajax to plaintiff to be applied to the defaulted interest payments on defendants' note. There was considerable testimony tending to prove that Isaly was a surety and an accommodation party on the note, and therefore, entitled to recover from the Sakers the amounts he paid on said note. However, since the court's decision in favor of Isaly on that issue is not the subject of this appeal, a further statement of facts on that issue is not necessary.

The Sakers assert the following three assignments of error:

"1. The court erred in failing to hold that the acquisition of loan collateral by the nominee of plaintiff bank constituted a retention of the collateral in lieu of collecting the debt.

"2. The court erred in failing to hold plaintiff to the burden of proof as to whether the ultimate sale of the said collateral was commercially reasonable.

"3. The court erred in overruling the motion for a new trial so as to permit the issues contained therein to be tried in the light of post-trial discovery of crucial evidence."

In support of their first assignment of error, the Sakers argue that plaintiff, by holding defendants' stock for a substantial period of time after defendants' default, made an election to retain ownership of the stock pledged as collateral in satisfaction of their debt to plaintiff. The Sakers did not offer evidence to rebut the stipulated facts that Ajax was comprised of trust officers of plaintiff and that Ajax was formed solely to act as an agent or nominee pursuant to instructions of plaintiff. There is no evidence in the record to indicate that Ajax acted other than as a nominee or that it ever assumed full ownership of the pledged stock.

In the absence of contrary evidence, "nominee" should be

given its commonly accepted meaning. It "\*\*\*connotes the delegation of authority\*\*\*in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him.\*\*\*" 28A Words and Phrases 316, 316 to 317.

R. C. 1309.48(B) defines the conditions under which a secured party may retain collateral as satisfaction of an obligation. R. C. 1309.48(B) reads as follows:

"In any other case involving consumer goods or any other collateral, a secured party in possession *may,* after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this division. In the case of consumer goods no other notice need be given. In other cases notice shall be sent to any other secured party from whom the secured party has received, before sending his notice to the debtor on or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under section 1309.47 of the Revised Code. In the absence of such written objection, the secured party may retain the collateral in satisfaction of the debtor's obligation." (Emphasis added.)

It is clear from the statute that retention of the collateral is a remedy available to a secured party, which such party may, or may not, elect to use. There is no indication in the record, in this case, that plaintiff ever intended to retain the collateral as satisfaction of the debt owed by the defendants' to plaintiff. The Sakers argument seems to be that since plaintiff retained the collateral for a long period of time, it made an election under R. C. 1309.48(B). While the Sakers are correct in asserting that a creditor may, under certain conditions, be deemed to have exercised its statutory right under R. C. 1309.48(B), the record before us does not support that conclusion in this case. The Sakers cite several cases from jurisdictions outside Ohio in support of their argument that plaintiff should be deemed to have made an election to retain the shares of stock in satisfaction of defendants' debt. However, we

believe the better view is the one stated by the courts of Georgia and Michigan which have held that "***[t]he existence [and holding] of a security interest in no way affects the existence of the [underlying] debt***[, but] merely provides the secured party with an immediate source of recovery in addition to the standard remedies of an unsecured creditor." *Michigan National Bank* v. *Marston* (1970), 29 Mich. App. 99, 106, 185 N.W. 2d 47, 50. See, also, *McCullough* v. *Mobiland, Inc.* (1976), 139 Ga. App. 260, 228 S.E. 2d 146. "***Nothing in the [Uniform Commercial] Code prohibits the creditor in possession of***[collateral] from proceeding in a judicial action on the note.***" *McCullough* v. *Mobiland, Inc., supra,* at page 263.

To conclude that plaintiff, in the present case, has elected to hold the pledged stock as satisfaction of defendants' debt would be to reduce plaintiff to the status of an unsecured creditor. The facts in the record before us do not support the judicial creation of such a result. Plaintiff, having not elected to hold the pledged security in satisfaction of the debt, was not required by R. C. 1309.48(B) to give defendants notice of such an election.

The evidence also supports the conclusion that, after defendants' default, plaintiff continued to consider defendants as the owners of the stock. Plaintiff notified all defendants of the terms of the proposed sale of the stock and offered them the opportunity to redeem the collateral. Proxy statements were forwarded to defendants, and plaintiff solicited direction from defendants with respect to the voting of the shares. Dividends from the stock were applied to the debt owed by defendants to plaintiff.

In addition, the Sakers failed to offer testimony indicating that plaintiff's retention of the stock for 22 months after defendants' default, in any way, harmed defendants. Further, the Sakers have failed to offer evidence that would indicate that plaintiff did not act in accordance with R. C. 1309.47 in the sale of the security. Accordingly, the judgment of the trial court, with respect to the first assignment of error, is supported by substantial and probative evidence. The first assignment of error is overruled.

In support of their second assignment of error, the Sakers argue that plaintiff had the burden of proving it disposed of

defendants' security in a commercially reasonable manner under R. C. 1309.47. That question was considered by this court in the case of *City National Bank & Trust Co.* v. *Washington* (Franklin Co. Ct. of Appeals No. 75AP-162, September 18, 1975), unreported. In that case, we held that, in a suit for a deficiency judgment, the burden of proof is upon the creditor to show that the sale of the collateral was accomplished in a commercially reasonable manner. However, before a plaintiff can be held to a burden of proof, the issue must be raised by the defendants. In the present case, the Sakers' answer did not contain such a defense; nor did the Sakers, after being notified by plaintiff on December 2, 1977, that plaintiff intended to sell defendants' stock, move to amend their answer or move for a continuance of the impending trial. The primary purpose of the Civil Rules is to give each party notice of a claim or defense. Plaintiff, in the case before us, had notice of only one defense asserted by the Sakers, and that defense was inconsistent with the defense that the sale of the stock was accomplished in a commercially unreasonable manner.

Even if the issue had been properly before the trial court, the only credible evidence offered was by a vice-president of plaintiff, who testified that plaintiff had spent approximately a year talking to various parties about purchasing the Eastern Ohio Bank stock and that plaintiff was not aware of a firm offer to purchase that stock at a price higher than the price at which it was sold. The Sakers failed to produce any evidence that would tend to prove that plaintiff did not dispose of the collateral in a commercially reasonable manner. The Sakers' remedy for any alleged violation of R. C. 1309.47 is the action described in R. C. 1309.50. The second assignment of error is overruled.

With respect to the third assignment of error, Civ. R. 59 is controlling. The Sakers assert that they have new evidence to support their allegation that the sale of the collateral was not commercially reasonable.

Civ. R. 59 provides, in part, as follows:

"(A) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

"* * *

"(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial[.]"

Since the issue of commercial reasonableness was not raised as an issue at trial, any purported-new evidence, with respect to said issue, clearly cannot provide the grounds for a new trial. The third assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY and MCCORMAC, JJ., concur.