**BC & S CONSTRUCTION, INC. and Lloyd's, Texas, Appellants,**

v.

**ACTION ELECTRIC COMPANY, Appellee.**

No. 2–87–234–CV.

Court of Appeals of Texas, Fort Worth.

July 21, 1988.

Clinton J. David, P.C., and David M. Seeberger, Dallas, for appellants.

Simon, Anisman, Doby, Wilson & Skillern, and Eric M. Olson, Fort Worth, for appellee.

Before FENDER, C.J., and FARRIS and LATTIMORE, JJ.

OPINION

FARRIS, Justice.

This is an appeal of a summary judgment granted in favor of a subcontractor against a general contractor and its surety under the McGregor Act. *See* TEX.REV.CIV. STAT.ANN. art. 5160 (Vernon 1987). The subcontractor, Action Electric Company (Action) sued the general contractor, BC & S Construction, Inc. (BC & S) for breach of a subcontract agreement by failing to fully pay sums due and owing for electrical work on a public works project initiated by a previous electrical subcontractor. Lloyd's,

Texas (Lloyd's) provided the payment bond on the public works project pursuant to the McGregor Act. Action filed a motion for summary judgment, and a partial summary judgment was granted on June 30, 1987. On July 2, 1987, trial was held on the issue of the amount of attorney's fees recoverable by Action. On July 29, 1987, the trial court entered a judgment in which both BC & S and Lloyd's were found jointly and severally liable to Action in the amount of $22,556.04 plus pre-judgment interest and attorney's fees.

Appellants raise three points on appeal. Their first point contends that Action failed to establish by competent summary judgment evidence the performance of conditions precedent required by the McGregor Act in order to perfect its right to sue and recover from Lloyd's under the payment bond. Appellants' second point argues that the affidavits attached to Action's motion for summary judgment are insufficient because the affiants failed to swear or affirm under oath that all facts stated in the affidavits were true and correct. Finally, appellants argue that Action did not sustain its summary judgment burden by showing that there was no genuine issue as to any material fact and that Action was entitled to any judgment as a matter of law. We overrule all of appellant's points of error and affirm the judgment of the trial court.

Appellants' first point, that Action did not provide Lloyd's with notice as a condition precedent to recovery under the McGregor Act, is without merit. TEX. REV.CIV.STAT.ANN. art. 5160 (Vernon 1987) allows a subcontractor who has furnished labor or material to a public works project to sue the surety for unpaid claims. As a condition precedent to recovery from the surety, the claimant is required to give written notice of the claim by registered mail to the general contractor and the surety. *See* TEX.REV.CIV.STAT.ANN. art. 5160(B) (Vernon 1987). The summary judgment evidence reveals that notice was sent to BC & S, the City of Arlington, and a company called Aztec Insurance (not a party to the suit). Lloyd's contends there was no summary judgment evidence showing notice to Lloyd's or showing that Aztec

had any authority to accept notice on behalf of Lloyd's.

■ Action alleged in its petition that all relevant conditions precedent to the appellants' liability had occurred or been performed. Appellants filed only a general denial and did not specifically deny that Action had given the statutory notice. TEX.R.CIV.P. 54 states in pertinent part:

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the [other] party.

Since Action affirmatively pleaded that all conditions precedent had been met, and since appellants failed to specifically deny such performance, Action was not required to offer proof that proper notification had been given. *See Skinny's, Inc. v. Hicks Bros. Const. Co.*, 602 S.W.2d 85, 90 (Tex. Civ.App.—Eastland 1980, no writ); *Continental Contractors, Inc. v. Thorup*, 578 S.W.2d 864, 866 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Appellants' first point of error is overruled.

Appellants argue in point of error two that the three affidavits, supporting the appellee's motion for summary judgment, are insufficient in that they fail to swear or affirm under oath that all of the facts stated in the affidavits are true and correct. In support of their argument, appellants rely on two cases: *Brown Foundation v. Friendly Chevrolet Co.*, 715 S.W.2d 115 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) and *Dixon v. Mayfield Bldg. Supply Co., Inc.*, 543 S.W.2d 5 (Tex.Civ.App.—Fort Worth 1976, no writ). We believe that appellants' reliance is misplaced since both cases are distinguishable from the situation in the instant case. Both the *Dixon* and *Brown* cases involved verified answers in suits on sworn accounts. In both cases, the pleadings specifically denied under oath that the debts involved were just and true. The court held that the verifications of

these pleadings were not effective because the affiant failed to swear or affirm under oath that the facts stated were true.

We believe that the facts preclude us from following the holdings in these cases. In examining the affidavits, we find they are extremely detailed and specific. Two of the affidavits, one from the president of Action and one from the former president of BC & S, went into great detail as to the reasonableness of the charges for materials and labor involved in the project. Furthermore, both affidavits stated that the various invoices attached as exhibits were true and correct. Both affiants, officers in the companies involved, stated they were personally acquainted with the facts regarding the materials and labor involved in the project. Both signed the affidavits and the verifications of the notary public state that the affidavits were "sworn to and subscribed before me." Although the affidavits do not specifically recite the matters stated therein are true and correct, we believe this is their obvious effect when considered in their entirety and therefore, they are not fatally defective. *See Southwest Park Outpatient Surgery, Ltd. v. Chandler,* 572 S.W.2d 51, 52 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Gutierrez v. Hachar's Department Store,* 484 S.W.2d 433, 435 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.). Appellants' second point of error is overruled.

Appellants' third point contends that summary judgment was improper because there existed a genuine issue of fact as to the amount owed by BC & S to Action.

Action's summary judgment proof contained an affidavit signed by Raymond Balboa. In that affidavit, Balboa stated that he served as BC & S's president from the time the corporation was organized until September 22, 1986. Balboa attached a contract and over seventy work orders, pay requests, and invoices for labor and materials. The contract, signed on June 28, 1986, by Balboa and a representative of Action, provided that BC & S would pay Action $38,000 to provide material and labor to complete and repair the construction begun by Fitzgerald Black Electric Company.

Balboa stated in his affidavit that he was physically at the project almost every day and that he was personally familiar with the work, labor, and materials that were furnished by BC & S's subcontractors. He stated that he knew of his "own personal knowledge that all of the goods, wares, materials, services and labor" specified in the work orders and invoices were "in fact" furnished to the construction project. An affidavit, with similar or identical attachments, as well as additional attachments, was filed by the president of Action. His affidavit contains language sufficient to allow the admission of the attachments as business records. We hold these two affidavits were sufficient to establish a prima facie case for Action.

BC & S relies on the affidavit signed by John Pelt, an agent for Lloyd's, which it filed in opposition to Action's motion for summary judgment. When read in combination with the affidavit of BC & S's secretary, it is apparent that Pelt acted as a sort of fiscal "watchdog" for BC & S. He was familiar with construction projects and he visited this project several times a week. BC & S alleges that the affidavit disputes the amount of damages by showing that Fitzgerald Black Electric had already provided most of the materials and labor for the project and that, therefore, the subcontract should not have cost BC & S any more than the $12,000 or $13,000 which had already been paid to Action. The pertinent parts of the affidavit read as follows:

Action Electric Company ("Action") was hired to complete the subcontract work of Fitzgerald/Black. The Fitzgerald/Black contract was for the sum of $48,500.00 plus a change order for $945.00. BC & S, prior to discharging Fitzgerald/Black, paid Fitzgerald/Black a total of $37,102.00, which was approximately 75% of the entire contract price. While at the Project, prior to discharge of Fitzgerald/Black, I saw that almost all of the electrical equipment, supplies, and materials which were to be provided and incorporated into the Project by Fitzgerald/Black had already been taken to the Project and had already been paid for

by BC & S. Because of my knowledge of the construction industry and of this particular Project, I know what materials were to be provided for the Project.

When I talked to an employee of Action who I believe was an officer of Action, whose name I do not recall, I was told by him that Action could complete the Fitzgerald/Black contract within the original Fitzgerald/Black contract price, which was $48,500.00 plus a $945.00 change order. Therefore, the Project should have completed [sic] by Action for approximately $12,000.00 or $13,000.00, which amount has been paid to Action.

. . . .

Therefore, since labor had been performed by Fitzgerald/Black and the bulk of the electrical materials for the Project had already been supplied and paid for prior to Action beginning any work on the Project, it is impossible that the electrical subcontract for the original amount of $48,500.00 plus a change order of $945.00 should have cost in excess of $73,000.00, which is the total of the amount paid by BC & S to date for electrical subcontract services plus the amount claimed by Action. Consequently, neither the invoices nor the pay requests submitted by Action can be proper and accurate and can be attributed to the Project, and therefore all sums claimed by action are in dispute. If Action is owed anything at all, it is substantially less than that sum claimed.

We first note that the language regarding information from an unknown employee of Action, which indicated that the job could be completed for the amount in the Fitzgerald Black contract, does not even purport to establish an amendment of the $38,000 contract between BC & S and Action.

Next, we hold that the language averring that most of the electrical labor, equipment, supplies, and materials needed for the project had been furnished by Fitzgerald Black is merely a conclusion of the affiant. *See Garza v. Allied Finance Co.,* 566 S.W.2d 57, 59–61 (Tex.Civ.App.—Corpus Christi 1978, no writ). Similarly, the allegations that neither the pay requests nor the invoices can be accurate and attributed to the project, that the sums are disputed and that Action is owed less than the sum claimed, are all conclusions of the affiant. *Id.* Finally, the allegation that the money previously paid to Fitzgerald Black and Action, added to the damages that Action requested, represented a total of $73,000 does not place any material fact in dispute. BC & S contracted to pay Action up to $38,000 on top of the $37,102 it had already paid to Fitzgerald Black, for a total of over $75,000 to be paid on the electrical subcontract. BC & S does not present any factual statement to dispute that it could be liable for up to $75,102 on the subcontract. The affidavit does not specifically aver that any invoice or pay request was false or inaccurate or was for work unrelated to the project. It merely concludes that there must be something amiss somewhere and therefore denies owing the amount sued for.

When the summary judgment movant has established a prima facie case, then the nonmovant must present some evidence to raise an issue as to a material fact, in order to prevent the summary judgment. *C.S.R., Inc. v. Mobile Crane Inc.,* 671 S.W.2d 638, 642 (Tex.App.—Corpus Christi 1984, no writ); *A & S Electrical Contractors, Inc. v. Fischer,* 622 S.W.2d 601, 603 (Tex.App.—Tyler 1981, no writ); *Woolhouse v. Tolchin Instruments, Inc.,* 601 S.W.2d 106, 108 (Tex.Civ.App.—Dallas 1980, no writ); *Garza,* 566 S.W.2d at 60. Mere conclusions of an affiant do not have probative value and are insufficient to raise a fact issue. *Life Ins. Co. of Virginia v. Gar-Dal, Inc.,* 570 S.W.2d 378, 382 (Tex.1978); *Straughan v. Houston Citizens Bank & Trust,* 580 S.W.2d 29, 32 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Garza,* 566 S.W.2d at 61. Appellants' third point of error is overruled.

The judgment of the trial court is affirmed.