Carolyn GREATHOUSE, Independent Executrix of the Estate of Clyde R. Greathouse, Deceased, Petitioner,

v.

CHARTER NATIONAL BANK–SOUTHWEST, Respondent.

No. D–0296.

Supreme Court of Texas.

July 1, 1992.

Rehearing Overruled Dec. 22, 1992.

Supplemental Opinion on Rehearing Dec. 22, 1992.

Gary L. McConnell, Angleton, for petitioner.

Larry Huelbig, Audrey Seldon, Houston, for respondent.

OPINION

HECHT, Justice.

Section 9.504 of the Uniform Commercial Code, TEX.BUS. & COM.CODE § 9.504, requires that collateral must be disposed of in a commercially reasonable manner. The Code, however, does not allocate the burden of pleading and proving whether this requirement has been met in an action by a creditor against a debtor for the deficiency due after disposition of the collateral. We granted writ of error to resolve a split among Texas courts of appeals over this procedural issue.

Forrest Allen & Associates, Inc. defaulted on a note payable to Charter National Bank–Southwest, guaranteed by Clyde R. Greathouse, and secured by an assignment of insurance expirations, commissions, accounts receivable, furniture and fixtures. Charter took the pledged collateral and sold it for $100,000, leaving a principal balance due on the note of $151,014.95. Charter then sued Forrest Allen and Greathouse for the deficiency, interest and attorney fees. Greathouse died during the pendency of the suit, and the independent executrix of his estate was substituted as a defendant.

Charter did not plead that it had disposed of the collateral in a commercially reasonable manner, but it did plead generally that: "All conditions precedent have been performed or have occurred. All just and lawful credits, payments and offsets have been allowed." Defendants answered with a general denial. At trial before the court without a jury, Charter's sole witness established the amount due on the note after foreclosure, and Charter rested its case. Greathouse then moved for judgment on the grounds that Charter had failed to plead or prove an element of its cause of action, namely, a commercially reasonable disposition of the pledged collateral. Charter responded that it had satisfied its plead-

ing obligation by alleging generally the performance of all conditions precedent, and that it was not required to prove the commercial reasonableness of the foreclosure absent a specific denial by Greathouse. Charter relied upon Rule 54, TEX. R.CIV.P., which states:

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

Charter also requested a continuance to procure evidence of the commercial reasonableness of the foreclosure sale. The trial court denied both Charter's request for a continuance and Greathouse's motion for judgment, and Greathouse rested its case without offering any evidence. After taking the case under submission, the trial court rendered judgment for Charter in the amount of $252,858.28.

Only Greathouse appealed.[1] The court of appeals affirmed, holding "that the burden of specifically *pleading* a lack of com-

mercial reasonableness or notice in a deficiency action under section 9.504 ... rests with the debtor." 795 S.W.2d 1, 3. Once the debtor has specifically raised the issue, the court held, the burden of proof is upon the creditor. The court reasoned: "Such an approach informs a creditor which areas (if any) are disputed and which items of proof must be produced; it does not allow a creditor to avoid *proving* its case.... Without indication of a debtor's objections, a creditor is prejudiced in the preparation of its case." *Id.* at 2.

On the procedural issue before us, the Uniform Commercial Code has not achieved its purposes of simplification and uniformity of commercial law. Texas courts are severely split on the subject. Many of them indicate that the creditor must plead and prove a commercially reasonable disposition of the collateral,[2] while others have treated commercial unreasonableness as a defense which the debtor must raise in order to shift the burden of proof to the creditor.[3] Our sister states are equally divided. Some states place the burden on the creditor in a deficiency suit to both plead and prove compliance with the notice and commercial reasonableness requirements of section 9.504.[4] In other states, the debtor raises the issue in pleadings as a

---

**1.** Charter does not challenge Greathouse's right to complain as a guarantor that the debtor's collateral was not disposed of in a commercially reasonable manner. We therefore assume, without deciding, that a guarantor may complain, in defense to a deficiency suit, that a creditor has failed to comply with section 9.504. *See Adams v. Waldrop*, 740 S.W.2d 32 (Tex. App.—El Paso 1987, no writ); *Carroll v. General Elec. Credit Corp.*, 734 S.W.2d 153 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Hernandez v. Bexar County Nat'l Bank*, 710 S.W.2d 684 (Tex. App.—Corpus Christi, writ ref'd n.r.e.), 716 S.W.2d 938 (Tex.1986) (per curiam); *Peck v. Mack Trucks, Inc.*, 704 S.W.2d 583 (Tex.App.—Austin 1986, no writ).

**2.** *Molyneaux v. MBank Corpus Christi*, 776 S.W.2d 744 (Tex.App.—Corpus Christi 1989, no writ); *Plato v. Alvin State Bank*, 775 S.W.2d 861 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Chase Commercial Corp. v. Datapoint Corp.*, 774 S.W.2d 359 (Tex.App.—Dallas 1989, no writ); *Boles v. Texas Nat'l Bank*, 750 S.W.2d 879 (Tex. App.—Waco 1988, no writ), *overruled on other grounds*, 813 S.W.2d 492, 495 (Tex.1991); *Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp.*, 749 S.W.2d 915 (Tex.App.—Dallas 1988, no writ); *Carroll v. General Elec. Credit Corp.*,

734 S.W.2d 153 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Peck v. Mack Trucks Inc.*, 704 S.W.2d 583 (Tex.App.—Austin 1986, no writ); *Commercial Credit Equip. Corp. v. West*, 677 S.W.2d 669 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.); *Gentry v. Highlands State Bank*, 633 S.W.2d 590 (Tex.App.—Tyler 1982, writ ref'd).

**3.** *Smith v. FDIC*, 800 S.W.2d 648 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd by agr.); *Stra, Inc. v. Seafirst Commercial Corp.*, 727 S.W.2d 591 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Sunjet, Inc. v. Ford Motor Credit Corp.*, 703 S.W.2d 285 (Tex.App.—Dallas 1986, no writ); *Ward v. First State Bank*, 605 S.W.2d 404 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *McCollum v. Parkdale State Bank*, 566 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Pruske v. National Bank of Commerce*, 533 S.W.2d 931 (Tex.Civ.App.—San Antonio 1976, no writ).

**4.** *American Nat'l Bank v. Perma-Tile Roof Co.*, 200 Cal.App.3d 889, 246 Cal.Rptr. 381 (1988); *Clark Equip. Co. v. Mastelotto, Inc.*, 87 Cal. App.3d 88, 150 Cal.Rptr. 797 (1978); *Barber v. Leroy*, 40 Cal.App.3d 336, 115 Cal.Rptr. 272 (1974); *Herman Ford-Mercury, Inc. v. Betts*, 251

counterclaim or a defense in order to put the creditor to proof on the matters so challenged, and the secured creditor then bears the burden of proving compliance.[5] A few states treat the issue as an affirmative defense.[6]

This division of authority illustrates the difficulty which attends an allocation of the burdens of pleading and proof. In discussing whether a matter should be considered an affirmative defense, Professor McDonald has observed:

> the allocation of an element to the plaintiff's case or to the defendant's affirmative pleading is not determined by abstract logic. There is no reason in logic,

N.W.2d 492 (Iowa 1977) (creditor required to plead and prove notification of debtor); *Twin Bridges Truck City, Inc. v. Halling*, 205 N.W.2d 736 (Iowa 1973) (as a condition precedent to recovering a deficiency, creditor was required to plead and prove notice of sale); *Bailey v. Navistar Fin. Corp.*, 709 S.W.2d 841 (Ky.Ct.App.1986); *Rexing v. Doug Evans Auto Sales*, 703 S.W.2d 491 (Ky.Ct. App.1986); *First Nat'l Bank v. Rose*, 188 Neb. 362, 196 N.W.2d 507 (1972) (secured creditor bears the burden of proof regardless of whether debtor raises the issue as an affirmative defense); *Bank of Burwell v. Kelley*, 233 Neb. 396, 445 N.W.2d 871 (1989) (commercial reasonableness is a condition precedent to a secured creditor's right to recover); *First Nat'l Bank v. Ruttle*, 108 N.M. 687, 778 P.2d 434 (1989); *Clark Leasing Corp. v. White Sands Forest Prod., Inc.*, 87 N.M. 451, 535 P.2d 1077 (1975); *Chittenden Trust Co. v. Maryanski*, 415 A.2d 206 (Vt.1980). *Cf. Vic Hansen & Sons v. Crowley*, 57 Wis.2d 106, 203 N.W.2d 728 (1973) (creditor seeking a deficiency has the burden of proving commercial reasonableness).

5. *Kobuk Eng'g & Contracting Serv., Inc. v. Superior Tank & Constr. Co.*, 568 P.2d 1007 (Alaska 1977); (debtor actually raised the issue; the court held that creditor had the burden of proof); *Thrower v. Union Lincoln–Mercury, Inc.*, 282 Ark. 585, 670 S.W.2d 430 (1984) (dicta); *Universal C.I.T. Credit Co. v. Rone*, 248 Ark. 665, 453 S.W.2d 37, 40 (1970); *Conn. Bank & Trust v. Incendy*, 207 Conn. 15, 540 A.2d 32, 38 (1988); *Savings Bank v. Booze*, 34 Conn.Supp. 632, 382 A.2d 226 (1977); *Branch v. Charlie Pike Chevrolet–Buick, Inc.*, 198 Ga.App. 672, 402 S.E.2d 544 (1991); *McEntire v. Indiana Nat'l Bank*, 471 N.E.2d 1216 (Ind.Ct.App.1984) (dicta); *Shawmut Worcester County Bank v. Miller*, 398 Mass. 273, 496 N.E.2d 625 (1986) (guarantors raised issue as a defense; waiver of "defense" ineffective); *First Missouri Bank & Trust v. Newman*, 680 S.W.2d 767 (Mo.Ct.App.1984) (secured creditor bears the burden of proving commercial reasonableness regardless of whether the debtor raised the issue as an affirmative defense); *Jones v. Bank of Nevada*, 91 Nev. 368, 535 P.2d 1279 (1975); *New Jersey Bank v. Green*, 145 N.J.Super. 560, 368 A.2d 431 (1976) (defendant raised issue); *Franklin State Bank v. Parker*, 136 N.J.Super. 476, 346 A.2d 632 (1975) (defendant raised issue); *Long Island Trust Co. v. Williams*, 133 Misc.2d 746, 507 N.Y.S.2d 993, 998 (1986) (once the issue was raised, the burden of proof remains with the secured party seeking a judg-

ment; discrepancy between prices and book value evidence sufficient to raise issue); *Fritts v. Selvais*, 103 N.C.App. 149, 404 S.E.2d 505 (1991); *Triad Bank v. Elliott*, 101 N.C.App. 188, 399 S.E.2d 1 (1990); *Parks Chevrolet, Inc. v. Watkins*, 74 N.C.App. 719, 329 S.E.2d 728 (1985); *Don Jenkins & Son Ford–Mercury, Inc. v. Catlette*, 59 N.C.App. 482, 297 S.E.2d 409 (1982); *Church v. Mickler*, 55 N.C.App. 724, 287 S.E.2d 131 (1982); *North Carolina Nat'l Bank v. Burnette*, 297 N.C. 524, 256 S.E.2d 388 (1979); *Allis–Chalmers Corp. v. Davis*, 37 N.C.App. 114, 245 S.E.2d 566 (1978); *Wachovia Bank & Trust Co. v. Murphy*, 36 N.C.App. 760, 245 S.E.2d 101 (1978); *American State Bank v. Hewson*, 411 N.W.2d 57 (N.D.1978); *Master Lease of Ohio, Inc. v. Andrews*, 20 Ohio App.3d 217, 485 N.E.2d 820 (1984); *Winters Nat'l Bank & Trust Co. v. Saker*, 66 Ohio App.2d 31, 419 N.E.2d 890 (1979); *but see, Huntington Bank v. Freeman*, 53 Ohio App.3d 127, 560 N.E.2d 251 (1989) (where there is a gross discrepancy between disposed and original sale price of collateral, creditor must make some affirmative showing that sale terms were commercially reasonable); *Savoy v. Beneficial Consumer Discount Ctr.*, 503 Pa. 74, 468 A.2d 465 (1983); *Fidelity Consumer Discount Ctr. v. Clark*, 333 Pa.Super. 306, 482 A.2d 580 (1984); *Rotta v. Early Indus. Corp.*, 47 Wash. App. 21, 733 P.2d 576 (1987) (preserved issue by raising in closing argument and post-trial motion for reconsideration); *Timms v. James*, 28 Wash.App. 76, 621 P.2d 798 (1980) (raised in argument).

6. *Burdick v. Tucker*, 780 P.2d 34 (Colo.Ct.App. 1989) (when secured party does not comply with notice provisions, a rebuttable presumption that sale price was equal to amount of outstanding debt; to rebut presumption, debtor must establish fair market value through evidence other than sale price); *McKee v. Mississippi Bank & Trust Co.*, 366 So.2d 234 (Miss.1979); *Ferrous Fin. Serv. Co. v. Wagnon*, 70 Or.App. 285, 689 P.2d 974 (1984) (see quoted jury instructions); *Bank of Chapmanville v. Workman*, 185 W.Va. 161, 406 S.E.2d 58 (1991) (debtors raised a jury question on their "defense" and counterclaim alleging that the sale was not commercially reasonable; if the jury found that the sale was commercially unreasonable, creditor was not absolutely barred from recovering deficiency; creditor could overcome rebuttable presumption by proving debt exceeded fair market value of collateral).

for instance, why a plaintiff should not be compelled as an element of his case to establish that he was free of contributory negligence or did not induce a particular contract by fraud; or that an assertedly subsisting claim has not been paid or released. Considerations of fairness and convenience, of the ease or difficulty of making proof, of the comparative likelihood that a particular defensive situation may exist in a reasonable proportion of the cases presented in court, and even of handicapping disfavored contentions, have contributed to the shaping of the concept of an "affirmative" defense.

2 ROY W. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 7.34.1.— C, at 221 (Frank W. Elliott ed., 1982 rev.). We employed one of these considerations in *Eckman v. Centennial Sav. Bank,* 784 S.W.2d 672, 675 (Tex.1990), to assign the burden of pleading and proving whether a plaintiff has assets of $25 million or more and thus is excepted from the definition of business consumer under the Deceptive Trade Practices—Consumer Protection Act, TEX.BUS. & COM.CODE § 17.45(4). In assigning that burden to the defendant, we reasoned:

> The comparative likelihood that a certain situation may occur in a reasonable percentage of cases should be considered when determining whether a fact should be allocated as an element of the plaintiff's case or to the defendant as an affirmative defense.... Obviously, most litigants do not have assets of $25,-000,000 or more. Requiring every DTPA plaintiff to prove that he is not a multimillionaire would be an inefficient and uneconomical use of judicial resources.

As Professor McDonald observed, logic alone does not dictate the assignment of the burden of pleading and proof. The division of authority throughout the country on the issue now before us demonstrates this. There is simply no clear answer to whether a creditor should be required to plead and prove that collateral has been disposed of in a commercially reasonable manner as an element of a claim for the amount due on the debt, or whether a debtor should be required to allege and show that collateral has not been so disposed of as a defense to the creditor's demand for payment. To resolve the issue, we consider factors like those Professor McDonald mentions.

A commercially reasonable disposition of collateral is in the nature of a condition to a creditor's recovery in a deficiency suit. We suggested this in *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 771 (Tex.1982), where we said: "The only limits on the creditor's disposition of the collateral is that it must be commercially reasonable, and must be made only after notification to the debtor if required by section 9.504. *Then and only then* is he entitled to sue for a deficiency." (Emphasis added.)[7] Evidence on the issue will ordinarily be more readily available to the creditor, who takes the collateral and arranges for its disposition, than to the debtor, who ordinarily plays no role in the disposition and is absent when it occurs. In general, it is easier for a creditor to prove that a disposition of collateral was commercially reasonable than for a debtor to prove it was not. Furthermore, the creditor controls the disposition of the collateral, and the debtor often has little or no say in how it is done. Accordingly, the creditor bears greater responsibility to demonstrate that the disposition met the requirements of law. However, the commercial reasonableness of a disposition of collateral is not in dispute in most deficiency suits. To require proof of this issue in every case, even if it is not disputed, would be an unreasonable burden on the judicial process.

Based upon these considerations, we conclude that a creditor in a deficiency suit must plead that disposition of the collateral

---

7. *See Hill v. Thompson & Knight,* 756 S.W.2d 824 (Tex.App.—Dallas 1988, no writ); *Gill Sav. Ass'n v. International Supply,* 759 S.W.2d 697 (Tex.App.—Dallas 1988, writ denied); *B C & S Constr., Inc. v. Action Elec. Co.,* 753 S.W.2d 841 (Tex.App.—Fort Worth 1988, no writ); *Texas Int'l Airlines v. Wits Air Freight,* 608 S.W.2d 828 (Tex.Civ.App.—Dallas 1980, no writ); *Southwestern Assoc. Tel. Co. v. City of Dalhart,* 254 S.W.2d 819 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.). *See also United States v. Trimble,* 86 F.R.D. 435, 436–437 (S.D.Fla.1980).

was commercially reasonable.[8] This may be pleaded specifically or by averring generally that all conditions precedent have been performed or have occurred. If pleaded generally, the creditor is required to prove that the disposition of collateral was commercially reasonable only if the debtor specifically denies it in his answer. Should the creditor plead specifically, then it must, of course, prove the allegation in order to obtain a favorable judgment.[9]

In this case, Charter met its burden of pleading by its general allegation that all conditions precedent had been performed. In answer, Greathouse did not specifically deny that Charter's disposition of the collateral was commercially unreasonable. Consequently, Charter was not required to prove commercial reasonableness at trial. The trial court did not err in rendering judgment for Charter. Therefore, the judgment of the court of appeals is

*Affirmed.*

DOGGETT, J., concurs in separate opinion in which MAUZY, J., joins.

DOGGETT, Justice, concurring.

Although joining in today's judgment, I write separately to express once again my concern regarding the unjustified delay in deciding this case. While a split of legal authority regarding even the single, narrow issue presented here necessitates careful review, the rather modest record together with briefing provided by the parties suggest that the sixteen-month lapse between argument and release of an opinion is too long. Such delay has a detrimen-

tal effect on both the parties and the process, as I noted in *Delaney v. University of Houston*, 835 S.W.2d 56, 61–62 (Tex.1992) (Doggett, J., concurring). I continue to assert that "justice delayed [has been] justice denied." [1]

A dilatory resolution of the issue presented injects prolonged uncertainty into commercial litigation, with resulting unfairness to businesses instituting suits to enforce debts, as well as to debtors who seek to ensure the proper calculation of any claimed deficiency. The delay also "breaches the public's trust in performing the duties of the judiciary in a timely and responsible manner." *Id.* at 61.

As judges, our commitment should be to a legal system that provides litigants a just and timely resolution of their disputes. *See* Texas Supreme Court, Code of Judicial Conduct, Canon 3, pt. A(7) ("[a] judge should dispose promptly of the business of the court."); Texas Lawyer's Creed—A Mandate for Professionalism (adopted November 7, 1989) (a judge owes the public the same "diligence, candor [and] punctuality" that this Creed demands of lawyers"). Today these obligations take second place to the majority's professed "traditions." 835 S.W.2d at 61. As I wrote in *Delaney:*

> In defense of this indefensible situation, it is urged that the "traditions" of this court are more important than the people to whom it is supposed to afford justice. 835 S.W.2d 56, 61 (per curiam).... When the "traditions" of this court cannot produce expeditious and fair resolution of litigation, they must be changed.... Everyone would be better

8. We express no opinion on the allocation of the burdens of pleading and proof of commercial reasonableness in an action by a debtor against a creditor for wrongful foreclosure. The considerations would be different from those in deficiency actions.

9. *See Twin Bridges Truck City, Inc. v. Halling,* 205 N.W.2d 736 (Iowa 1973) (as a condition precedent to maintaining suit for deficiency after repossession and sale of truck, creditor was required to plead and prove the required notice of sale). The Iowa court noted that plaintiff was not required to allege performance (the giving of notice) in detail, but was still required to allege performance of all conditions prece-

dent entitling it to recover. *Id.,* citing *Henschel v. Hawkeye Security Ins. Co.,* 178 N.W.2d 409 (Iowa 1970), Rule 98 of the Iowa Rules of Civil Procedure, and its model, Rule 9(c) of the Federal Rules of Civil Procedure. Iowa's Rule 98, and Federal Rule 9(c), like our Rule 54, allow a pleader to aver generally that all conditions precedent have been met.

1. *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826 S.W.2d 489, 489–90 n. 1 (Tex.1992) (Doggett, J., dissenting) (noting failure to release opinion forcing taxpayers to pay unconstitutional property taxes until the passage of several deadlines, including that for payment of taxes).

served by fewer excuses and more leadership in getting the important work of this court accomplished.

835 S.W.2d at 61.

What is unfortunate today is not my writing, nor even the majority's defensive indignation, but the regrettable state of affairs when the court cannot perform its duties in a timely fashion.

MAUZY, J., joins in this concurring opinion.

## PER CURIAM CONCURRING OPINION

We write separately, once again, to answer the charge of the concurring justice that this Court has unduly delayed reaching and pronouncing a decision. The charge is unfair and wrong. We reiterate the concerns we expressed in the Court's per curiam concurring opinion in *Delaney v. University of Houston*, 835 S.W.2d 56, 64–65 (Tex.1992):

> To assist in realizing our purpose, this institution, like other deliberative bodies, has developed traditions which engender mutual tolerance and respect and enable its members to work together to accomplish their required tasks. These traditions wisely counsel civility and fairness in our opinions.... In leveling accusations against members of the Court to which they cannot ethically respond, the concurring opinion assaults these traditions, violating the spirit of professionalism....

Only the Members of this Court and our employees who have access to our deliberations can accurately assess who among us is diligent in his work. The public must hold the Court as a whole responsible for the quality and timeliness of our decisions. Every Justice is and should be concerned about the prompt and orderly disposition of our cases, which is accomplished by working together, not by personal posturing. The concurring opinion harms the entire Court and, we are confident, benefits no one. We therefore disassociate the Court not only from the content, but also from the spirit, of that writing.

## SUPPLEMENTAL OPINION ON REHEARING

DOGGETT, Justice.

The injustice addressed in my earlier concurring opinion has only been compounded. The decision in this case, not announced for sixteen months after oral argument, has now been deferred an additional four and a half months. The delay in issuing opinions in this court continues uncorrected. *See Schick v. Wm. H. McGee & Co.*, 843 S.W.2d 473, 475 (Tex.1992) (Doggett, J., concurring opinion on order granting motion to dismiss) ("When this court delays nearly two years in deciding a case ..., no one wins and everybody loses."); *Hines v. Hash*, 843 S.W.2d 464, 470 (Tex.1992) (Doggett, J., concurring) (prevailing attitude here "indicates that Texans can expect more delays from a justice system that is not functioning in a proper manner.").

MAUZY, J., joins in this supplemental opinion on rehearing.