In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-237 CV


____________________



J.P. RYAN ENTERPRISES, INC., Appellant



V.



BILL MATTHAEI, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 04-05-03379-CV






MEMORANDUM OPINION


 Bill Matthaei sued J.P. Ryan Enterprises, Inc. for breach of a contract for sales
commissions. Matthaei pled that all conditions precedent had been performed. Because
Ryan Enterprises had not specifically denied the performance or occurrence of any condition
precedent in its answer, the trial court prohibited Ryan Enterprises from calling any witnesses
in defense of the suit. In six appellate issues, Ryan Enterprises complains that the trial court
erred: (1) in denying Ryan Enterprises an opportunity to present a defense, including
affirmative defenses, except through bills of exception; (2) in ruling that Texas Rule of Civil
Procedure 54 prevented Ryan Enterprises from requiring Matthaei to prove Matthaei's
performance of any of the terms and duties under the contract; (3) in refusing to allow Ryan
Enterprises to present evidence regarding the duties of a sales representative and the
allocation of a commission when the representative performs only part of the required duties;
(4) in awarding prejudgment interest "as additional compensation" from May 25, 2000; (5)
in awarding prejudgment interest on the prejudgment interest awarded "as additional
compensation"; and (6) in awarding appellate attorney's fees without support in the evidence
and not predicted on success. By cross-points, Matthaei contends that the trial court erred
in allowing Ryan Enterprises to present evidence on affirmative defenses because Ryan
Enterprises's pleading of "all the defenses in Rule 94" failed to raise any affirmative
defenses, and that the case should be remanded to receive evidence on attorney's fees for the
appeal if the appellant prevails on its sixth issue. We reverse the judgment and remand for
a new trial.

 The contract between Matthaei and Ryan Enterprises required Matthaei to "[p]romote
the sales of all products for which the business has a contractual agreement for payment of
commissions and other products which may be a part of projects discovered while pursuing
business." The contract described Matthaei's compensation, as follows:

 The payment to Independent Contractor shall be 60% of net income paid to the
business until the realization of $50,000.00 to the business. This shall be
escalated to 70% as soon as orders entered reach the above amount in the . . .
calendar year. . . . The next escalation to 80% is reached with the subsequent
$50,000.00 net income to the business. Levels of compensation shall not be
modified retroactively. Payment of commissions will be made within 10
working days of receipt of full payment to the business and documented upon
written request from the Independent Contractor. Delays in payment after due
date shall result in additional compensation due the Independent Contractor at
0.0616% per day beginning with the 10th day. Failure to meet the
compensatory portion of this agreement shall constitute a revocation of all
terms of the agreement. For purposes of defining compensations due, the
delivery of a written purchase order from the customer to the business shall
constitute 33% expected performance and compensation due the Independent
Contractor upon completion of project.


 The contract stated that "in the event that the business takes over a partially completed
project, the Independent Contractor shall not be entitled to any compensation as liquidated
damages for the Independent Contractor's failure to complete on a timely basis as designated
on each project."

 Ryan Enterprises received $151,757.32 on the job in dispute and paid $54,340.18 to
other parties in its supply chain. Ryan Enterprises paid half the remaining amount,
$31,201.75, to Matthaei on May 15, 2000. Matthaei negotiated the check, but below his
endorsement wrote "accepted as one half of commission due me." Matthaei filed the suit on
May 5, 2004. Ryan Enterprises was served on May 11, 2004.


 The case was tried to the trial court. In response to defense counsel's opening
argument, Matthaei's counsel invoked Texas Rule of Civil Procedure 54 and argued that
Ryan Enterprises could not raise an issue on the plaintiff's performance of the contract. See
Tex. R. Civ. P. 54 ("In pleading the performance or occurrence of conditions precedent, it
shall be sufficient to aver generally that all conditions precedent have been performed or
have occurred. When such performances or occurrences have been so plead, the party so
pleading same shall be required to prove only such of them as are specifically denied by the
opposite party."). The trial court did not rule immediately and Matthaei proceeded with his
case-in-chief.

 Bill Matthaei testified that he personally drafted the contract's compensation clause. 
The disputed transaction involved a sale of medium voltage electrical terminations. The
product was purchased from a company called G & W, sent to a company called Power
Supply for relabeling and shipping; Ryan Enterprises then sold the product to a wholesale
house called Graybar, who "marked it up" and sold it to Texas Instruments. Matthaei 
explained his duties included "[p]romoting the sale of the product . . . and obtaining a
purchase order and . . . subsequent to that I would receive equipment at the wholesale place,
relabel the equipment and reship it to the other location." . . . On cross-examination,
Matthaei testified that his commission was conditioned upon payment being received.
According to Matthaei, quality issues could come up after the customer paid for the
equipment, but he denied that problems with the equipment arose in the transaction involved
in this dispute. Matthaei admitted that he performed no engineering or specification work
"[o]ther than meeting with [Texas Instrument's] people" because they were fairly familiar
with the equipment and "were probably the most knowledgeable customer that I had ever
dealt with in terms of the type of equipment that we were using." Matthaei admitted that
John Ryan made a trip to the manufacturer to confirm the quality of the equipment before
Matthaei entered the purchase order, but claimed there were no problems with the equipment
after it was installed at Texas Instruments. Regarding when his right to payment of the
commission arose, Matthaei testified that Ryan Enterprises had been paid sometime in April
2000. According to Matthaei, his right to additional compensation commenced on May 25,
2000, ten days after Ryan Enterprises paid him half of the commission. When counsel for
Ryan Enterprises attempted to cross-examine Matthaei regarding the performance required
by the contract, counsel for Matthaei objected on the grounds that Ryan Enterprises failed
to make specific denials under Rule 54. The trial court asked counsel for Ryan Enterprises
why Matthaei was not entitled to the full sixty percent commission. Counsel explained that,
by giving Ryan Enterprises a purchase order, Matthaei had done one-third of the work, and
that Matthaei was expected to go with the Texas Instruments engineer to G & W as part of
his performance under the contract. The trial court ruled that Rule 54 applied and found that
"all the conditions precedent have been met. . . . for recovery under the contract."

 Matthaei called John Ryan as an adverse witness. Ryan testified that Matthaei was
paid a thirty percent commission. Upon examination by counsel for Ryan Enterprises, John
Ryan explained that Matthaei obtained the purchase order, thereby earning one-third of his
commission. Ryan testified as follows:

 There were a number of discussions about performance and what
needed to be done to earn the additional balance of the 67 percent and it was
my position that Bill fully earned the 33 percent of the 60, not 50 percent. And
we've talked about that and I said, look, you just didn't perform the balance
of what needs to be done on this project and I told him we were -- we would
agree to pay him more than the 33 but not the full commission. So, we agreed
to a 50 percent of the normal 60.


 . . . . 


 I spoke to him at length on a number of occasions about what needed
to be done on this project and I was told he didn't have time to do it.


 . . . .


 There was [sic] a number of technical support issues that needed to be
completed. As Bill had stated, the Texas Instruments was on the verge of not
placing any -- any of his business with us because of severe quality control
problems. . . . The other 67 percent is that support, is handling the factory
issues, quality control issues, the technical support issues that the customer
expects to have happen. . . . So Bill just said, look, I am not doing this, I have
got other things I have got to do, you are going to have to handle it. So I
handled it.


 Ryan claimed the fifty percent split was the product of negotiation between the parties. 
 According to Ryan, before May 5, 2000, Matthaei was "well aware" that he would not
receive the full commission and as a settlement, they had agreed to payment of half of the
commission. Ryan claimed Matthaei did not participate in any of the work to resolve the
quality control issues. He testified as follows:

 A typical process is when the job is complete -- when the money all
comes in and we sit down and say, okay, there's -- in Bill's case it was 33
percent of the 60 went for getting the order and the balance went for technical
support during engineering and getting problems resolved and handling the
customer, the end user. At that point we sit down and there can be -- in cases
before this and cases after, there can be two or three salesmen involved. Bill
is not the only independent contractor that works for us. We have multiple
people working on projects like this, and the commissions are divided at the
end of the project based on who did what.


 . . . . 


 There were other projects that everyone works on. The percent of full
commission, who gets 60 percent -- we can't pay 60 percent to three
salespeople who work on the same project. The commission splits are very
common. Probably more than 50 percent of the orders that we do there is a
split of commissions because everyone works together to accomplish what
needs to be accomplished.


 Q. And did Mr. Matthaei have -- after the contract we're talking about
here was signed did he split commissions with Ryan Sales where he had not
done all the work?

 

 A. Right. Commission splits with Bill Wharton, with others who did
part of the work. You get paid for what you do. If you bring in the order
typically you get 25 percent. Bill modified that 33 which everyone accepted. 
But if all you do is bring in an order, really all you have earned is 33 percent
of the 60. If other people handle other work, they earn the balance of the
commissions to it.



 After Matthaei's counsel testified regarding attorney's fees and rested, counsel for
Ryan Enterprises informed the trial court that, because the contract did not describe the
performance required to earn the sixty-seven percent of the commission beyond the thirty-three percent for turning in the purchase order, he would present witnesses to testify
regarding industry and company practice. John Ryan presented additional bill of exception
testimony that he personally took at least a dozen meetings and several trips with Texas
Instruments on the disputed job. The trial court excluded the testimony but allowed Ryan
Enterprises to perfect bills of exception. After hearing the bills, the trial court noted "I think
that the decision might be different if we didn't have the Rule 54 problem" and asked the
parties to brief the issue. The court coordinator subsequently notified the parties that the
judge had made the following docket entry:

 Feb 8, 2006 Court finding that Rule 54 invoked by Plaintiff precluded Def
from producing any evidence that all conditions precedent had
not been met. Finding for Plaintiff. Attorney's fees in amount
of $9,600.00.


 In its response to Matthaei's motion for judgment, Ryan Enterprises moved to re-open
the evidence "in support of their defenses to Plaintiff's claim of breach of contract (not as
to 'conditions precedent' as alleged by Plaintiff) and their affirmative defenses."

 Although the record is somewhat confusing, we discern that the trial court ultimately
disregarded all of the evidence elicited by counsel for Ryan Enterprises, including his
examination of John Ryan during Matthaei's case-in-chief. This is significant because much
of the material presented in the bills of exception was also elicited through Ryan's trial
testimony. By excluding all of Ryan Enterprises's evidence, refusing to permit Ryan
Enterprises to offer any evidence on its general denial, and summarily ruling that Matthaei's
uncontroverted pleadings established that he satisfied all conditions for recovery under the
contract, the trial court essentially entered a directed verdict.

 As support for his position that all of Ryan Enterprises's proffered evidence was
inadmissible under Rule 54, Matthaei cites two cases in which the plaintiff made a general
pleading of conditions precedent under Rule 54. See Greathouse v. Charter Nat'l Bank -
Sw., 851 S.W.2d 173, 177 (Tex. 1992); Betty Leavell Realty Co. v. Raggio, 669 S.W.2d 102
(Tex. 1984). Greathouse involved a deficiency suit in which the defendant challenged the
commercial reasonableness of the sale of the collateral for the first time in a motion for
judgment. Greathouse, 851 S.W.2d at 173. The Supreme Court held that the statutory
requirement of a commercially reasonable disposition of collateral is a condition precedent
that may be pled by a general averment under Rule 54. Id. at 176-77. The other case
involved a suit to recover a real estate commission. See Betty Leavell Realty Co., 669
S.W.2d at 102. The real estate contract conditioned the agent's right to a commission upon
the purchaser obtaining financing within 20 days. Id. at 103. The defendant in that case pled
that the purchaser failed to obtain financing within 20 days as required by the contract. Id. 
The pleadings effectively placed upon the plaintiff the burden of proving that the purchaser
satisfied the condition precedent for recovery of the commission. Id. at 104. Both cases
involved conditions precedent, not performance and breach of the contract.

 This case bears more similarity to the case in which a church seeking to recover a
claim for water damage on an insurance contract pled the occurrence of conditions precedent,
and the insurance company relied on its general denial. See Love of God Holiness Temple
Church v. Union Standard Ins. Co., 860 S.W.2d 179, 180 (Tex. App.--Texarkana 1993, writ
denied). On appeal, the church argued the insurance company failed to plead any unfulfilled
condition precedent and thus waived all defenses against liability. Id. The appellate court
noted that the dispute related to coverage under the policy, not merely to a condition to suit
on the policy. Id. at 181. Although the insured pled the occurrence of conditions precedent,
the insurance company's general denial placed in controversy the allegations in the church's
pleadings that water damage was an insured peril and that the roof and interior of the church
building were damaged by water due to severe inclement weather. See id.

 Rule 54 provides a mechanism through which a plaintiff may avoid having to prove
that he met conditions precedent that are not in dispute. See Tex. R. Civ. P. 54. In the
absence of a limiting clause, whether a certain contractual provision is a condition, rather
than a promise, must be determined from the contract as a whole and from the intent of the
parties. Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). 
In this case, the trial court applied Rule 54 to not only relieve the plaintiff of the burden of
proving the occurrence of conditions precedent, but also relieved the plaintiff of the burden
of proving the elements of his cause of action and prohibited the defendant from presenting
evidence to challenge the elements of the plaintiff's cause of action. Matthaei specifically
alleged that he "earned a commission in the amount of $62,403.50 under the terms of the
contract." The general denial filed by Ryan Enterprises placed that specific allegation in
controversy. Matthaei had the burden at trial to prove that he earned a commission in the
amount of $62,403.50 under the terms of the contract, and Ryan Enterprises had the right to
challenge Matthaei's evidence with evidence that Matthaei did not earn a commission in that
amount under the terms of the contract. By refusing the defendant the right to present this
evidence, the trial court effectively ruled for the plaintiff without considering the merits of
the controversy. We hold the trial court erred in restricting its consideration of the evidence
relevant to the dispute, and that the error probably caused the rendition of an improper
judgment. Point of error two is sustained.

 If meritorious, Ryan Enterprises's other issues would afford identical relief. 
Therefore, we decline to address points of error one, three, four, five, and six. Because it is
contingent upon our sustaining a point of error we do not reach, we decline to address cross-point one.

 In his second cross-point, Matthaei contends the trial court erred in allowing Ryan
Enterprises to present evidence on its affirmative defenses on an answer that alleged,
"Defendant also pleads all the defenses in Rule 94 of the Texas Rules of Civil Procedure." 
The trial court did not allow Ryan Enterprises to present any defense and permitted it to call
witnesses only through bills of exception. Matthaei does not provide record references for
any evidence admitted over his specific objection based upon Rule 94. Matthaei fails to
demonstrate that he preserved the error raised on appeal. See Tex. R. App. P. 33.1. In any
event, Matthaei has not demonstrated why any error would entitle him to an affirmance of
the judgment. Cross-point two is overruled. We reverse the judgment and remand the case
to the trial court for a new trial.

 REVERSED AND REMANDED.





 _____________________________

 STEVE McKEITHEN

 Chief Justice



Submitted on February 15, 2007

Opinion Delivered April 26, 2007


Before McKeithen, C.J., Gaultney and Horton, JJ.